By the Court. Duer, J.
Upon the pleadings and proofs in *510 this case, we are asked to restrain the defendants by a perpetual injunction, from erecting any building-or obstruction of any kind upon the terrace at Hew Brighton, designating by the name of terrace, not only the highway or avenue running along the bank, which is the northern boundary of the village, but the whole of the bank itself, extending from the avenue to high water mark; and this relief is asked upon the ground, that long previous to the filing of the bill, and to the acquisition by the defendants of the title under which they claim, the whole terrace, using the term in its widest sense, had been irrevocably dedicated to the use of the public, or, which we regard as equivalent, to the use of the inhabitants of Hew Brighton.
To enable us to determine whether the plaintiff is entitled to this relief, we have deemed it necessary to examine with care the allegations in the bill, since it is upon their relevancy and truth, that our power to grant, either the specific relief which is sought, or any other, must depend. We must act upon the case as stated in the bill, and established by the proofs; not upon a case which, although it may possibly be sustained by the evidence, the bill has failed to state, and the defendants have not been required to answer. It would be a laborious, and we think quite unnecessary process, to draw out and examine in detail, the various averments and allegations in the bill. It is sufficient to say, that after an attentive consideration and careful analysis of its contents, we have arrived at the conclusion, that the only dedication of the terrace and bank, which the bill sets forth, is a dedication made by the directors of the Hew Brighton association, with the knowledge and assent of the defendant Davis, as mortgagee; and that the only authentic and legal proof of the proceedings of the directors to which the bill refers, is the resolution adopted by the board on the fourteenth day of July, 1836, which the bill avers was passed for the purpose of carrying into effect the original determination of the associates, that the terrace down to high water mark should be kept open and unincumbered for the' common use and benefit of the residents of Hew Brighton. It is upon the basis of this resolution, and upon this basis alone, that a decree in favor of the plaintiff, if such a decree can be made, must be founded; and this is virtually con *511 fessed in the final prayer of the bill, which is, that the defendants “ may be perpetually enjoined from making any building or erection on the said terrace or bank thereof, or doing any other act or thing in relation to the said terrace contrary to the terms of the said resolution, and of the representation in this behalf above set forth.”
It is true the representations made by Davis and other directors, which are largely set forth in the bill, and to the proof of which the testimony of the witnesses was mainly directed, are here connected with the terms of the resolution, but it was very distinctly and very properly admitted, by the able counsel for the plaintiff, that these representations furnished of themselves no substantive ground of relief, and could be properly referred to, not as creating or constituting a dedication, but merely as evidence of an existing fact. For oiu-selves, we exceedingly doubt, both upon principle and upon the authorities cited upon the argument, whether the evidence given of the representations made by individual directors, in other words, of their declarations and assurances, ought not to be wholly rejected, and we are very clear in the opinion, that if admitted at all, it can only be received so far as it tends, not to contradict or vary, but to confirm, and perhaps explain the proceedings of the board.
The representations made by the directors individually, relate to the intentions and acts of the directors as a body, and of these intentions and acts the resolution of the board is, not only the highest and best, but we apprehend, the only legal proof; at any rate, all the other evidence in the cause bearing upon the fact of dedication, must be regarded as secondary and subordinate, and no construction inconsistent with the terms of the resolution can therefore be given to it. It is not to be denied that other acts and proceedings of the directors as a body, independent of the resolution of the board, are stated and relied on in the bill, but whatever effect might have been given to these acts and proceedings, if standing alone, it is certain that it is in connexion with the resolution that they must now be considered, and in subordination to its terms that they must now be construed, since in reality, it is this consistent interpretation that the bill, as framed, not merely requires, but compels us to adopt. Had the plaintiff *512 intended to rely upon the adoption and filing by the association of the map of Hew Brighton, and the publication of an engraved view, in both of which the terrace and bank are represented as open and unincumbered, as conclusive proof of their absolute and final dedication to public use, and not simply as evidence illustrating the intentions of the directors, as set forth in their resolution, this subsequent resolution, if its terms are inconsistent with such a dedication, would not have been referred to at all, or if referred to, instead of being stated as the very foundation of the relief that is prayed, the right of the directors to adopt it would have been expressly denied.
As the bill is framed, the plaintiff not merely admits, but insists, that the resolution was duly and legally passed, and has never been repealed; and it is upon the allegation, that its terms have been violated, and in order to prevent their future violation, that a perpetual injunction is demanded. Such being the frame and prayer of the bill, if we are satisfied that the resolution of the board was in fact adopted, we have no right to disregard it, but are bound to give to the other acts and proceedings of the directors such a construction as may reconcile them with its terms. Hor in this view of the case is it very material to inquire whether the resolution, as originally passed, was after-wards repealed or reconsidered ; for if reconsidered, it still remains as evidence that at the time of its passage, the directors claimed the right to make such a disposition of the bank as in their judgment the interests of the association might require. It is, therefore, evidence that there had been no previous dedication inconsistent with the exercise of this right, and its validity as such evidence is necessarily admitted by the bill.
We «ball not consider the controverted question of fact, whether the resolution was reconsidered and never finally passed, but for the purposes of this opinion, shall assume that the averments in the bill are sustained by the proofs, and consequently that the resolution was not only duly passed, but was never repealed, and remained in force, at least, during the lifetime of the association.
Upon this hypothesis, the questions to be considered are, First, whether it was competent for the directors to pass such a *513 resolution, or more generally, had they any legal right to make an absolute or conditional dedication bf the Tjank to the use of the inhabitants of LTew Brighton? and second, supposing the legal right of the directors to be established or admitted, do the terms of the resolution, taken in connexion with other facts in the case, create such a dedication as can entitle the plaintiff to the relief that is sought?
It is evident that unless we can determine both of these questions in favor of the. plaintiff, it will be unnecessary to consider any other of the numerous questions that were raised and elaborately discussed upon the hearing; and more especially will it be unnecessary to consider whether the defendants, as purchasers of mortgaged premises under a decree of foreclosure and sale, can be affected by any dedication, absolute or conditional, subsequent in date to the execution of the mortgage. If the dedication set forth in the bill were invalid in law, or as a fact is not established by the proof, it is plain that the bill must be dismissed.
The question, whether the directors of the Hew Brighton association had the power to make a valid dedication of the premises in question, applies not only to the resolution which they adopted, but to all them acts, proceedings, and representations set forth in the bill, even upon the supposition that these could be made the subject of distinct consideration, as furnishing of themselves a sufficient ground for relief. If the object could be effected by any act of the directors, a resolution of the board was the most solemn and effectual means of its accomplishment.
It is needless to cite authorities to prove that an absolute and final dedication of lands to a public use, can only be made by the owner of an absolute fee. It is a self evident truth that he only can devote his real estate in perpetuity to the use of the public, who is competent to convey a fee by a perfect and unincumbered title to an individual. It is certain, however, that neither the directors of the association, nor the shareholders whom they represented, and as whose agents they acted, were the owners of the fee during any period of the existence of the association, unless the deed to the trustees, Louis McLane, and others,' which was executed on the same day as the articles of association, and adopts and incorporates them, was *514 Avholly inoperative and void. From the time of the execution of this deed, (the validity of which as an express trust to sell lands for the purpose of satisfying a charge thereon, was very faintly questioned by the plaintiff’s counsel, and is not at all doubted' by ourselves,) the whole title, legal and equitable, of the Hew Brighton property, was vested in the trustees, and remained so, as to all portions of it not sold by them, during the continuance of their trust; and during this period the shareholders and directors of the association, not only had no estate or interest whatever in the lands, hut no power or authority to dispose of any portion of them, either by a dedication to the public or by a sale to individuals, without the consent and co-operation of the trustees. Whether the trustees themselves, without a violation of their trust, could have disposed of the lands or any portion of them by any other mode than an actual sale, it is needless to enquire, since it is enough to say that without their assent and concurrence, we are satisfied that no such disposition could he made by any other persons.
It seems, therefore, to be a fatal objection to the relief which the plaintiff seeks, that it appears from the documents to which the hill refers, and which it partly recites, namely, the trust deed, and articles of association, that the fee, subject to the mortgage to the defendant, Davis, was vested wholly in the trustees, and it is neither averred nor proved, that their sanction or approval was ever given to those proceedings of the directors which are relied on as evidence of a valid and perpetual dedication. It is not even averred or proved that these proceedings were known to the trustees, so that no foundation is laid even for presuming their acquiescence. It may he, that the knowledge and co-operation of Davis as mortgagee are both averred and proved, and that his assent, had the transaction been otherwise valid, would have been binding upon the subsequent assignees of the mortgage, and even upon the purchasers under it; hut to render the transaction valid, the -assent of the trustees, ■ manifested by some positive act, was just as indispensable, and it is not pretended to have been given.
In order to meet these objections, the learned counsel for the plaintiff was reduced to the necessity of saying that the trust *515 deed effected only a technical alteration of the title, and that the powers of the trustees were purely nominal. He contended that by force of the articles of association the entire control and management of the property, with an xmlimited power of disposition, were entrusted solely to the directors, leaving to the trustees a mere formal duty of signing, sealing, and acknowledging such conveyances as the directors might require them to execute. The directors, in the exercise of their discretion, were to sell, the trustees, as a matter of course, to convey; consequently, as a dedication may be made by acts in pais, without a deed, no assent or act of the trustees was necessary to give validity to that which the bill avers, and the evidence (it is said) proves to have been made.
To these views of the learned counsel, which in substance are put forth in the bill itself, we have found it impossible to assent. Had there been no trust deed—had the persons who formed the New Brighton Association continued to be the owners of the fee, the articles of association might very reasonably have been construed as clothing the directors with the full discretionary powers which the counsel found it necessary to attribute to them. But the trust deed cannot be rejected, nor the articles be separately construed. The deed and the articles were executed upon the same day, they are parts of one entire transaction, and the deed contains an express provision, not only that the articles are to be deemed a part thereof, but that for all legal and practical purposes the two instruments are to be considered and construed together. We are bound, therefore, to adopt a construction by which any seeming contradiction in their provisions may be removed and reconciled.
What, then, is the nature of the trust? What are the powers which the deed gives to the trustees ? They are directed “ to sell and dispose of the lands conveyed at such time and times, and in such manner, either at public or private sale, in such parts or portions, and for such prices as to them, or any two of them, might seem most expedient.” If this discretionary power of sale was valid at all, it rendered it impossible for the directors, collectively or individually, by any act, resolution, or representation, to withdraw from the exercise of the power any portion of *516 the lands which it embraced. The directors could have no right to dedicate lands to the use of the public, which the trustees could take from the public, whenever they might deem it expedient to sell them to individuals. Hence the clauses that have been cited from the trust deed must either be wholly expunged, or the articles of association must be construed to mean that the powers which they give to the directors shall be exercised in subordination to those that the deed gives to the trustees. It is only by this construction that the provisions of the two instruments can be rendered consistent, and we are, therefore, bound to adopt it. Nor is this all. The construction that we follow is necessary to render the trust deed effectual at all; it is necessary to preserve its legal existence. A trust to sell lands, and not simply to convey them, is that which the revised statutes alone authorize, and a construction that would rob the trustees of a discretionary power of sale, by rendering the trust passive and nominal, would not merely weaken its efficacy, but destroy its existence. The trust deed is a nullity, if the article of association must be construed as abridging to this extent the powers of the trustees. It is our duty, however, so to construe the deed as to preserve its validity, if without violence to its terms such a construction can be given to it, and the major part of the proprietors of New Brighton may do well to remember that upon the validity of the trust deed that of their own titles depends.
For the reasons that have been given, we must adhere to the opinion that we have already expressed. We will not say that, the trustees, by joining in a dedication, could have rendered it valid, but we do not at all hesitate to say that without their assent and co-operation the alleged dedication by the directors was illegal and void.
We pass to the second question that we proposed to consider, and upon this we shall not long dwell. Waiving the objections that have been stated, and considering the directors of the association as the representatives and agents of the owners of the fee, with full authority to act upon their behalf, what are the terms and the legal effect of the resolution which they adopted!
*517 The resolution, as set forth in the bill, is in these words: “ Resolved, That the whole of the bank in front of the Richmond Terrace, and extending down to high water mark, shall be reserved in perpetuity by this association, to be kept open and never obstructed by buildings of any kind, and that for the advantages to be derived from this reservation, the whole of the Yew Brighton property shall be assessed by valuation, and that for beautifying and keeping the same in' order, said property shall also be ratably assessed, and in case it shall at any time be found necessary to make any dock at the end of either of the avenues or streets, no building shall be erected upon the same to exceed fifteen feet in height.” When we reflect, with a very slight attention, upon the terms of this resolution, and upon their plain and necessary import, it seems extraordinary that they should ever have been appealed to as evidence of an immediate and final dedication, or, indeed, of any dedication at all. They furnish no such evidence. The resolution is in no sense of the term a dedication. It is merely a conditional declaration of future intentions. A stipulation on the part of the directors that the bank should be kept open and unobstructed upon certain terms and conditions; conditions, the performance of which the association itself had no power to enforce, but which depended for then* fulfilment solely upon the will and action of the proprietors of blew Brighton, all and each of thefn. What are these conditions ? They are, First, That the proprietor of each lot embraced in the blew Brighton property should consent to its valuation, and should agree to pay, and actually pay such sum as might be assessed upon its value for the advantages he would 'derive from the reservation of the bank in the manner contemplated in the resolution; and, Second, that each proprietor should also agree to pay from time to time such sums as might be ratably assessed upon his lot for beautifying the bank and keeping it in order. That these conditions, and more especially the first and most material, have been, are meant to be, or can now be complied with or enforced, has not been averred in the bill, proved by the evidence, or pretended upon the argument. What then does the bill in seeking relief upon the basis of this resolution require us to do ? It requires us to strike out *518 and wholly expunge the conditions; to read and construe the resolution, as if they had never been inserted; and to hold that the resolution, in this absolute form, is binding upon the defendants, and by a perpetual injunction to restrain them from its violation. To such a request we cannot listen. It is sufficient in a court of equity to have explained its nature. The explanation is its denial. The directors of the -association offered, in effect, to sell the bank to the proprietors of lots for a valuable consideration. The plaintiff asks that the bank may be conveyed without any consideration at all.
The learned counsel for the plaintiff, pressed by the difficulties that have been stated, abandoned in his reply the case as set forth in the bill, and which in his opening he had endeavored to sustain. Instead of demanding relief upon the basis and according to the terms of the resolution of the directors, he denounced it as an exercise of an usurped authority; an illegal attempt of the board to prescribe conditions which the association had no right to impose. He insisted, that long before the resolution was passed, a perfect and absolute dedication of the bank to the use of the inhabitants of Hew Brighton, and for the purposes set forth in the bill, had been made ; a dedication which the association and its directors had no power to revoke or modify. He argued, both upon the evidence and the law, that this válid and irrevocable dedication had been made by Davis himself, when absolute owner of the fee, and before any title whatever had been passed from him to the Hew Brighton association. It was during thisL'penod, he contended, and under the authority of Davis himself, that the Hew Brighton property had been surveyed, formed into the plat of a town or village, and as such, laid out and divided into lots, streets, avenues, and squares ; and that it was under the order and by the direction of Davis, that a map exhibiting the future village in all its meditated perfection, was prepared and finished; the very map which was produced in evidence, and upon which the terrace and bank are represented as open and unobstructed. And in proof of these facts he referred to the conveyance from Davis to the associates, their mortgage to him, and their deed to the trustees, in each of which instruments the premises conveyed are described by an express and *519 minute reference to the map as then existing. Upon the force and legal effect of the evidence upon which the counsel relied, we shall express no opinion. It may be, that the circumstances aipon which he dwelt hear a close resemblance and analogy to those which in several of the cases that he cited were held to he conclusive; but we are satisfied that, from these circumstances, we have no right at present to draw a judicial conclusion.
We are satisfied, that upon the pleadings and proofs in this ease, we have no right to decide, and consequently must refuse to consider, the question whether Davis, as owner of the fee, made such a dedication of the terrace and hank as can entitle the plaintiff .to the relief that she asks. Ho such case is made, no such question raised, by the bill. It contains no such allegation. On the contrary, the assertion that a valid and prior dedication was made by Davis, is wholly inconsistent with the allegations that the hill does contain, and with the grounds, the only grounds, upon which it demands relief. The bill very plainly admits that the Hew Brighton associates, when they acquired their title, had an absolute right, td make such a disposition of the bank as they might deem most conducive to their own interests, and it is upon their subsequent acts and proceedings in the exercise of this admitted right that the prayer for relief is exclusively founded. We must take the bill as it is. In this stage of the cause we have no power to amend it; we cannot therefore make a decree, that so far from corresponding with the allegations of the bill must directlv contradict them. Such a decree would be a violent and unprecedented departure from established rules. The maxim is trite, but we know not that it has ever been violated, that in a court of equity relief can only be granted smundvm tarn, allegata tam probata. Compelled to act upon tlie bill, as it stands, it is unnecessary to re-state our reasons for holding that its material allegations are not sustained by law or by the evidence. It must therefore he dismissed with costs.
Although we are constrained to dismiss the bill, we ought not to conclude this opinion without saying, that upon nearly all the questions of law that were so ably and learnedly discussed upon, ike hearing, we entirely agree with the counsel for the plaintiff *520 and yield our full assent to the conclusions which he pressed 'upon our adoption. We do not at all doubt, however singular the anomaly which is thus created in the law, that a dedication of lands to a public use, in effect, extinguishing for ever the title of the owner, may he made by an act in pais ; that the doctrine of prescription is not applicable to the case, so as to require evidence of a long user in order to establish the right, but that a valid dedication may he made by a single act, if positive and unequivocal in its nature, and especially where purchases have been made upon the faith that the act was meant to induce; that to constitute a public use, it is not necessary that the public at large, that is all persons, without distinction, shall he able, or be entitled, to share in its advantages, hut it is sufficient that its advantages are meant to be shared and may he shared by the inhabitants, or by a portion of the inhabitants, of a city, town, or village, or other locality; and finally, that the terrace and bank at Hew Brighton, in consideration of the benefits the inhabitants of the village, and particularly those residing upon the terrace, would he certain to derive from their being kept open, were just as properly a subject of dedication as a street, avenue, or square.
A diligent examination and study of the numerous cases hearing upon these points that were cited upon the argument, has enabled and entitles us to say that, in our judgment, they fully sustain, in terms, or by a necessary deduction, all the positions to which our assent has now been expressed.
We shall add a few observations, perhaps extra-judicial, but we think not irrelevant. It is impossible to read the testimony of the numerous witnesses who have been examined in this case, without being satisfied that many, and probably a large majority of those who have purchased lots and built houses upon the terrace at Hew Brighton, have done so, in the full expectation and belief, that the bank in front of their dwellings was to he kept ©pen and unobstructed, in the manner and for the purposes set forth in the bill, and implied in the resolution of the directors; nor can it be doubted that the prevalence of this belief enabled the Hew Brighton associates to demand, and induced the purchasers to pay, a much larger price for their lots than would otherwise have been exacted, or could have been obtained. It may he *521 true that this belief of the purchasers was mainly founded upon assurances to which in prudence they ought not to have trusted; but looking at the circumstances as they then existed, it is not a matter of surprise or blame that these assurances were given, nor can the expectation to which they led be deemed at all unreasonable. There is, therefore, an equity in the case of these proprietors, including the plaintiff, that all must feel; and this equity, although it may not legally reach the defendants and perhaps can never be judicially enforced, we trust they will not fail to acknowledge.
We indulge a confident hope that the claims of innocent and deceived purchasers will be fairly considered, and, in the result, their reasonable expectations be substantially fulfilled.