## Fisher *et al.* v. Beard.

1. **Dedication: PUBLIC GROUNDS: INJUNCTION.** Where the owner of lands lays out a town thereon and sells lots to purchasers with reference to the plat thereof, the purchasers of such lots acquire as appurtenant thereto a vested right in and to adjacent grounds designated on such plat as public grounds, to the full extent such designation imports; and a diversion of the same from such purpose by the proprietor will be restrained by injunction at the instance of a purchaser.

2. —— **CHANGE OF PLAT.** Nor can this right of purchasers be affected by a subsequent change of the plat by the proprietor, without their consent.

3. —— **PAROL DEDICATION.** A dedication of public grounds, at least so far as purchasers are concerned, may be made by acts *in pais,* and established by parol representations of the proprietor to purchasers of lots at the time of sale, that the space in question should remain public and unoccupied.

Fisher v. Beard.

4. —— To constitute a public use it is not requisite that the public at large shall be entitled to share its advantages, but it is sufficient if it may be enjoyed by a portion of the inhabitants.

5. —— STATUTE OF LIMITATIONS. The statute of limitations will not begin to run as against the rights of persons purchasing lots under representations of the proprietor that an adjacent space should remain public and unoccupied, until he does some act inconsistent therewith.

*Appeal from Marion District Court.*

WEDNESDAY, OCTOBER 4.

THIS action was commenced on the 6th day of January, 1869, for the purpose of enjoining the defendant from laying off into lots, selling the same for building purposes, and erecting buildings thereon, a certain block or square in the city of Pella, known, and platted on the recorded plat of said city, as "Garden square," and from diverting said square from its alleged original purpose and use, as intended by the proprietor of the city when the same was laid off, platted, acknowledged by him, and the plat recorded, and lots adjacent thereto sold, and as represented and agreed by him it should be used when making sales of lots, and as understood and relied upon by the purchasers of the adjacent lots, viz.: that the said "Garden square" was and should remain a public square and an open space, unoccupied by buildings. An order for a temporary writ of injunction was granted.

At the March term, 1869, of the district court the defendant answered; and moved to dissolve the injunction, and also demurred to the petition, which being sustained, plaintiffs appealed to this court. The ruling of the district court was reversed and the cause remanded.

At the March term, 1871, of the district court the plaintiffs filed an amended and substituted petition, to which defendant demurred. The demurrer was sustained,

and plaintiffs again appeal.  The further material facts are stated in the opinion.

*Stone, Ayres & Curtis* and *Withrow & Wright* for the appellant.

*Z. T. Fisher* for the appellee.

MILLER, J. — I.  The first ground of demurrer is, that "the petition does not state facts sufficient to constitute a cause of action."

1. DEDICATION: public grounds: injunction.        This general form of demurrer is allowable when interposed, as in this case, to a petition in equity (Rev., § 2877) ; and raises the question whether the facts stated in the petition entitle plaintiffs to the relief prayed therein.

The material facts alleged are, that one Henry P. Scholte was the original proprietor of the town (now city) of Pella, in Marion county, Iowa; that he laid off the same in blocks, lots, squares, streets and alleys, and platted the same accordingly ; that on the plat thus made out, by the order and direction of said Scholte, there was designated and described thereon, and near the center thereof, a certain square or open space, as " *Public square ;* " that Scholte exhibited this plat, with said square so designated thereon, to divers and sundry persons, among whom were some of the plaintiffs, and others were the grantees of said Scholte, under whom the other plaintiffs claim ; that said Scholte pointed out said plat, with said square so designated thereon, and stated and represented that the same was a *public* square, and was to be reserved and maintained for the public use and benefit ; that said square was block twenty-six, as the same then was and is now numbered on the plat of the city ; that some of the plaintiffs, and the vendors of others, who purchased lots situated on and adjoining said block or " *public square,*" as the same was

then designated on the plat, and represented by Scholte, purchased the same and paid therefor, with the express understanding and belief, created both by the designation thereof on the plat then shown them by Scholte and by the statements and representations of said Scholte, that said block or square was intended for, and should always remain a " public square," and that the same should forever be and remain an öpen, unoccupied space, for the benefit and advantage of the adjacent lot owners and the residents of the city generally ; that when said Scholte offered the lots of the city for sale, he fixed the prices of the lots fronting on this square at $100 each, while the prices on the other lots marked and designated on the plat, not fronting on the square, were fixed at $50 each; that the lots were sold accordingly; that the greater price fixed for lots fronting on the square was so fixed and charged for the reason and in consideration of the facts stated and represented by said Scholte, and indicated by the plat, that said square should remain an open space or public square; that in consideration of such statements and representations, and in the belief that said square would remain open and unoccupied by buildings, the grantees of Scholte, in purchasing lots of him fronting on the square, paid therefor $100, each, and that the price so paid was in part consideration of the facts before stated in respect to said square; that after the making out and exhibiting of the plat marked and designated as aforesaid, " the said Scholte changed the designation of said block No. 26, from "Public" to " Garden square," but after said change had been so made, and while still offering the lots adjoining the same for sale, he stated to various and divers persons, that the said last-mentioned designation meant and indicated a " Public square," and that notwithstanding said change the same was intended for, and should forever remain an open unoccupied space, and that the same would not be laid off

Fisher v. Beard.

into lots, or occupied with buildings, or incumbered with structures of any kind; and plaintiffs aver, that they, and others who purchased lots adjoining said square, after the change made in the designation of said square, or block, from "Public" to "Garden square," as aforesaid, purchased and paid the additional price charged therefor, in consideration of the fact, and with the understanding, based as aforesaid upon the representations and statements of the said Scholte, and his subsequent acts hereinafter mentioned, that the said block was designated as an open unoccupied space, and that the same would not be laid off into lots, or have buildings erected thereon, for the purpose of business or trade, or for residences, or other purposes, by private individuals, or otherwise. And they aver that they and their vendors purchased the lots now owned by them adjoining said block, or square, and paid therefor as aforesaid, in good faith, relying upon the representations, statements, and general understanding as before mentioned, that said block would never be diverted from its present character, as an open square or place, and appropriated to private purposes, with buildings erected thereon for the purpose of competition with them in trade and business, or for any other purpose. And they aver, that such was and has always been the public and general understanding among the property owners and residents of the said city of Pella. And they further aver that since the change was made in the designation of said block, on the said plat, as before mentioned, and up to the time of the death of said Scholte, on or about the 20th day of August last, he, the said Scholte, represented and stated to all persons that his intention still was to keep said block, or square, as an open space, as the same was at the time open to the use of the public, and that the same should not be sold, or divided into lots, contrary to the original understanding, and general expectation of the people, and that up to the time of the death of said Scholte, he had never offered, at-

tempted, or proposed to divide said square into lots, or put buildings thereon, or deed the same or any part thereof for such purpose."

It is further averred that said Scholte, in 1864, conveyed said "Garden square" to his wife, the defendant in this case, who, since the commencement of this action, has intermarried with Robert R. Beard; that said conveyance was made without any valuable consideration and for the purpose of enabling said H. P. Scholte to divert said square from the purpose and use to which the same was originally dedicated and intended, and to deprive the citizens of Pella, and especially the plaintiffs and other owners of lots fronting on the square, of the use and benefit thereof as an open and unoccupied space or square, and to enable said Scholte, in violation and disregard of his statements and representations in respect thereto, to appropriate the same to his own use; that the defendant had full knowledge of all the facts alleged, and took said conveyance, well knowing the purpose for which it was made.

It is also averred that said square has always been used by the public as a public square, open and unoccupied by buildings of any kind; that on the 30th day of August, 1868, Scholte died, and that the defendant now threatens to lay off said square into lots and sell the same for the erection of buildings thereon for the different purposes of trade and business, to the prejudice and injury of the plaintiff.

The demurrer admits the truth of all these alleged facts.

It will not be necessary for us to inquire whether the facts alleged establish a dedication of the square in controversy to the *public use* generally, that is, to the extent that the fee passed to the public, or that they acquired a right to the *unrestricted* use thereof. But it will be sufficient to inquire and ascertain what are the rights, if any, of the plaintiffs.

The law is well settled, that when the owner of lands lays out a town thereon and sells lots to purchasers with reference to the plat thereof, the purchasers of such lots acquire, as appurtenant thereto, a vested right in and to the use of adjacent grounds, designated as public grounds on such plat, to the full extent such designation imports, which right cannot be divested by the owner making the dedication nor by the town in its corporate capacity. *The City of Dubuque* v. *Maloney*, 9 Iowa, 450; *Leffler* v. *The City of Burlington*, 18 id. 361; *Bowen's Exr.* v. *Town of Portland*, 8 B. Mon. 232; *Livingston* v. *Mayor of New York*, 8 Wend. 106; *Wyman* v. *Mayor of New York*, 11 id. 487; *Trustees of Watertown et al.* v. *Cowen & Bagg*, 4 Paige's Ch. 510; *City of Cincinnati* v. *White's Lessees*, 6 Pet. 431; *Barclay* v. *Howell's Lessees*, id. 468; *The State* v. *Wilkinson*, 2 Vt. 480.

If, therefore, the plat of Pella, as at first made out by the proprietor, showing and designating the block in controversy as a "public square" had not been

2. —— change of plat.

changed, and lots had been purchased of the proprietor with reference to the plat as thus made, the purchasers would have thereby acquired a vested right to the use of the block as a public square. And where lots have been sold with reference to such plat before the same was changed, the rights of purchasers could not be affected, without their assent, by any subsequent change in the designation of the square. See *Watrous & Snouffer* v. *Blair et al., ante,* 58.

It is equally well settled by modern authority, that a dedication of lands may be made by parol, without any

3. —— parol dedication.

deed or other written evidence; that the mere oral declarations and acts of the owner will warrant the presumption of a dedication, though followed by public enjoyment for ever so short a time. Indeed, the time of enjoyment is immaterial. *Morrison* v. *Marquardt*, 24 Iowa, 35; *Pearsall* v. *Post*, 20 Wend. 111; *City of*

*Cincinnati* v. *White's Lessees, supra ; Tallmadge* v. *East River Bank,* 26 N. Y. 105; *Ward* v. *Davis,* 3 Sandf. 502; *Child* v. *Campbell,* 5 Seld. 251.

In *Tallmadge* v. *East River Bank, supra,* the owner of lots on both sides of a city street made a plan exhibiting the street as widened eight feet on each side, and represented to several vendees of different lots, that all the buildings to be erected on the lots he had sold should stand back eight feet from the line of the street.  The vendees erected buildings in conformity with this plan; none of them being restricted by their conveyances or bound by any covenant in respect to the extent or mode of occupation, and it was *held* that the owner of the land might, by *parol contract* with the purchasers of successive parcels, in respect to the manner of its improvement and occupation, affect the remaining parcels with an equity, requiring them also to be occupied in conformity to the general plan which would be binding upon the owner, and upon a subsequent purchaser with notice, though his legal title be absolute and unrestricted.

In *Ward* v. *Davis, supra,* the court says: " We do not at all doubt, however singular the anomaly which is thus created in law, that a dedication of lands to a public use, in effect extinguishing forever the *title* of the owner, may be made by an act *in pais ;* that the doctrine of prescription is not applicable to the case, so as to require evidence of long user to establish the right, but that a valid dedication may be made by a single act, if positive and unequivocal in its nature, and especially where purchases have been made upon the faith which the act was meant to induce; that to constitute a public use, it is not necessary that the public *at large,* that is, all persons without distinction, shall be able, or be entitled to share its advantages, but it is sufficient that its advantages are meant to be, and may be shared by the inhabitants, or by a *por-*

*tion* of the inhabitants of a city, town or village, or other locality.

In *Morrison* v. *Marquardt*, *supra*, the language of this court, upon the question of parol dedication, is, "that there may be a dedication to *public use* without a deed or other written evidence is undoubtedly true. But in such case the intent to dedicate should be clear, and the acts or circumstances relied on to establish such intention unequivocal and convincing." This language undoubtedly speaks the law on this subject, and it is certainly essential that the facts and circumstances should clearly show an intention to dedicate; but yet, "whatever may be the owner's *real* intention, if his conduct is at variance with his purpose, he cannot afterward contest the rights of those who have embarked in projects and formed expectations upon the strength of the appearances he held out to them, which it would be ruinous to disappoint." Hammond's *Nisi Prius*, 194; Per Cowen, J., in *Pearsall* v. *Post*, *supra*.

Now it is averred in the petition that when Scholte changed the designation of the block from "Public square" to "Garden square," which left it in doubt as to its character, he stated and represented that such change of designation was not intended to affect the character of the square, but that the same was intended to remain an open and unoccupied space, and never to be incumbered with buildings or other erections thereon. It is also averred that the plaintiffs and their grantors relied on these representations and purchased lots adjacent to this square, in view of the plan exhibited to them by the owner, and his explanations and representations touching the same. It seems clear to us that, upon the principles of the cases above cited, the purchasers of lots fronting on this square acquired a vested right to have the same remain an open space, unoccupied by buildings, as fully as if the designation on the plat had remained "*Public* square," as at first made and exhibited; and that the owner of the land, and his grantee with notice,

are estopped from undertaking to divest them of such right. The facts averred establish a dedication, at least so far as the rights claimed by plaintiffs are concerned, which is in the nature of an estoppel *in pais*, and which precludes the original owner, and his grantee with notice, from revoking such dedication. The facts and circumstances and repeated declarations of Scholte, averred in the petition, make it perfectly clear that it was his intention that this square should remain an open space, unoccupied by buildings. And although the facts alleged may not be sufficient to establish such a dedication to *public use* so as to vest the fee of the square in the public, or to give to the public the free and unrestricted use of the land, yet they do show a dedication thereof so as to vest in the plaintiffs — owners of lots fronting on the square — a right or easement therein in view of which they purchased, and for which they paid a valuable consideration, namely: the right to have the same remain open and unobstructed by buildings or other erections.

This right or easement acquired by the original purchasers from Scholte became affixed to the lots fronting on the square in the nature of a covenant running with the land and passed to subsequent grantees of the lots without any special assignment or conveyance thereof. Whoever purchased one of these lots to which the easement was attached became entitled thereto, and whoever became the grantee of the square upon which this easement was a burden, with notice thereof, would take the same burdened with the easement. See *Hills* v. *Miller et al., supra; Trustees of Watertown et al.* v. *Cowen & Bagg, supra.*

In the case last cited the court also held that a grantee of a lot adjoining a public square, who has a special covenant from the original owner of the square, that it shall be kept open for the benefit of his lot and not built upon, may file a bill in equity to restrain the grantor from violating his covenant. We have seen that a parol dedication is

as effectual as a written covenant, so that the case in 4 Paige is direct authority to support the claim of plaintiffs in this case.

In *The Mayor and Council of Macon* v. *Franklin*, 12 Geo. 243, where the facts relied on to enjoin the sale were the declarations of the auctioneer who sold the lots adjacent to a certain block, that, although it was platted into lots, it should not be sold, but should be forever reserved as a common, it was *held* that this was a dedication of the block by parol, not as to the public, so that they could enforce the same, but as to the purchasers of adjacent lots who bought with a view to the block remaining a common.

In addition to the cases before cited, see the following as supporting the views herein expressed: *Commonwealth* v. *Rush*, 14 Penn. 190; *Rivers* v. *Dudley*, 3 Jones (N. C.), 136; *Brown* v. *Manning*, 6 Ohio, 298; *In matter of Lewis Street*, 2 Wend. 472; *Livingston* v. *Mayor, etc.*, 8 id.    ; *Clement* v. *West Troy*, 16 Barb. 251; Washburne on Easements, 186, 187, and cases cited in notes; 2 Smith's Lead. Cas. 176.

II. The second question argued is upon the ground in the demurrer that the plaintiffs' action is barred by the

5.——statute of   statute of limitations. The petition shows
limitations.      that the rights claimed by the plaintiffs had
been enjoyed ever since the laying out of the town, and had not been questioned or attempted to be prejudiced, until a few weeks prior to the commencement of the action. Nothing appears in the pleading which shows that the defendant's possession, or that of her grantor, was in any manner inconsistent with, or adverse to, the rights of the plaintiffs. The extent of the easement claimed by plaintiffs is, that the square in controversy shall remain an open space, unoccupied by buildings or other erections. So long, therefore, as there was no attempt of the defendant or her grantor to erect buildings on the square, or to sell or lease the same for that purpose, the plaintiffs had

no right of action, and until a right of action accrued the statute of limitations would not run. This time is shown by the petition to have been very shortly before this action was brought and within the period of the statute. The demurrer on this ground, also, should have been overruled, and the judgment of the district court is

Reversed.   ✓