New York and New Haven Rail Road Company *v.* Pixley.

--------

THE NEW YORK AND NEW HAVEN RAIL ROAD COMPANY
*vs.* PIXLEY.

An agreement to dedicate land for a public road is valid, although, when reduced to writing, it is not executed by the party who is to furnish the consideration.

Where the defendant, in letters signed by him, and addressed to the plaintiffs or their agents, stated the terms and conditions upon which he would consent to the making of a road across his land, by the plaintiffs, upon a compliance with which terms and conditions be agreed to convey the title to the land; and the plaintiffs manifested their assent to the terms, by commencing operations upon the road, with the knowledge of the defendant; *Held* that the plaintiffs, by accepting the defendant's proposition, came under a legal obligation to perform the requirements of the agreement, on their part; and that this was a valid and sufficient consideration for the defendant's agreement.

And the plaintiffs having substantially performed the stipulations of the agreement, on their part, and the defendant having proceeded to shut up the road, after it had been used by the public several months, a perpetual injunction was granted, restraining the defendant from obstructing the road; but without

New York and New Haven Rail Road Company *v.* Pixley.

prejudice to any claim which he might have against the plaintiffs for a specific and entire performance of the agreement, and for damages by reason of the failure (if any there had been) of such performance.

THIS was an action brought against the defendant for the purpose of obtaining a perpetual injunction to prevent his closing up a road through his land, from the highway known as King street, in the town of Rye in the county of Westchester, to the plaintiffs' station house at Port Chester.

In 1849 the plaintiffs erected their station and freight house at Port Chester, upon the line of their road where it passes through that village, a short distance from any public road, and about twenty-five rods from the King street road. The defendant owned the land between the King street road and the station house. · For the accommodation of the public and the plaintiffs, and in order that access with carriages might be had to the station house, an arrangement contained in a series of letters, was made between the parties, to the effect that the road should be opened over the defendant's land ; the plaintiffs to build the fences, work the road, &c. The plaintiffs built the fences, and worked the road, after which it was used by the public, for some months ; when the defendant proceeded to shut up the road, upon the ground that the plaintiffs had not complied with their part of the contract. From doing this he was enjoined by a preliminary injunction. Proofs were taken. The additional facts sufficiently appear in the opinion of the court.

*S. E. Lyon*, for the plaintiffs.

*J. E. Beers*, for the defendant.

S. B. STRONG, J. Previous to the 15th of June, 1850, there had been some negotiation between H. B. Smith, as agent for the plaintiffs, and the defendant, relative to opening a public road across his land, from King street to the depot on the rail road at Port Chester. On the day which I have specified, Smith wrote a letter to the defendant, in which he says : " I am

now prepared to make an arrangement with you, and fence the road, and other matters immediately. We want some kind of title for the road, or have it recorded a public road." The defendant, on the 18th of the same month, sent an answer, in which he said "you have my consent to make the road on certain conditions, which I believe are perfectly understood between us, but, lest there should be some misunderstanding, I will state what I expect and require to be done in *consideration* for the land to be used for, and recorded as, a public road"— "and when the following requirements shall have been executed· all the title needed from me shall be granted." He then goes on to state those "requirements," among which is the following. "Said road thus thrown open to be so graded as to be accepted by the town," with a provision relative to its continuance to the "Purchase road," which was subsequently waived. The counsel for the defendant contends that this was not an operative agreement, as there is no sufficient proof that it was assented to by the plaintiff; but it appears to me that the evidence of their asssent is strong, and indeed conclusive. It would seem from the extracts which I have made from the communications between the parties, that the arrangement relative to the dedication of the land for a public road, including the consideration (in services to be performed by the plaintiffs) was, as the defendant says, "perfectly understood" and was reduced to writing by him to prevent any future misunderstanding. Probably under those circumstances a formal acceptance of the agreement, by the plaintiffs, was unnecessary. It would have been inferred under the circumstances, had they been silent. In *Mactier* v. *Frith*, (6 *Wend.* 119,) Judge Marcy says that keeping silence under certain circumstances is an assent to a proposition. But the agent swears positively that "he did agree in behalf of the plaintiffs to carry out the arrangement." The defendant differs from him in this particular, as he says in his answer that neither the plaintiffs nor any of their agents or servants consented at any time to accept of the terms, conditions and stipulations mentioned and expressed in the letter of the 18th of June. It is however plainly inferrible from the cor-

New York and New Haven Rail Road Company *v.* Pixley.

respondence between the parties, in the month of September, in the same year, that the agreement had been accepted by the plaintiffs ; and if not, that correspondence evinced an acceptance of it by them, with a modification which was then proposed by them and assented to by the defendant.   Besides, the plaintiffs' agreement to the defendant's proposition (if it may be so termed) was shown by their commencing operations upon the land pursuant to its terms, with the knowledge of the defendant, and under circumstances clearly intimating his consent, at the time.   That the plaintiffs assented to the condition on which the defendant proposed to modify the agreement, is apparent from the fact stated by him, that they gave him the free ticket which that condition required.

It is well settled, by the highest authority, that an agreement for the sale of land is valid if signed by the vendor and accepted by the purchaser, although not signed by the latter.   If so, an agreement to dedicate land for a public road, (which need not be in writing) may be valid, although when reduced to writing it may not have been executed by the party who is to furnish the consideration.

There can be no doubt that the plaintiffs by accepting, and thus becoming parties to, the agreement, came under a legal obligation to perform its requirements upon them.   That was a valid and sufficient consideration for the defendant's engagement.

From the provisions of the agreement, the land proposed for a highway was to be thrown open immediately.   That was necessary to enable the plaintiffs to grade the track.   The road was accordingly opened and worked, and it had been used by the public without any objection from the defendant from September, 1850, to the following June.   It might be a question whether, under these circumstances, the land had not been effectually dedicated to the public beyond any power of revocation, even if the plaintiffs had failed to perform what they had agreed to do, to its full extent.   That would certainly be so if the performance of the plaintiffs' part of the agreement was not

made a condition precedent to the dedication. If it had been, and the condition had not been fully performed, it might still be a question whether the free use of the land by the public, as a highway, with the knowledge of, and without objection from, the owner, would not sufficiently evince a dedication by him, even under those circumstances. There is nothing to show, or to lead to the inference, that the terms of the agreement between the parties were publicly known. Appearances certainly indicated that the lands were fully thrown open, and that it was designed that there should be a full and unrestricted passway. Purchases of land may have been made, buildings may have been erected, and there may have been other arrangements, in the vicinity of this road, upon the very natural supposition that it was free for the public.

The plaintiffs were of course bound to perform their part of the requisitions contained in the agreement, unless such performance was waived by the defendant. Have they done so? They seem to think, and have attempted to prove, that they have. The defendant thinks otherwise. There is no entire failure in any one particular, nor any thing to show, satisfactorily, that the plaintiffs designed to disregard their engagement. The parties do not differ as to the particular services required, but as to the extent in a single instance. If in this the plaintiffs have been mistaken, it would seem to be hard to deprive them wholly of all benefit from their labor and expenditure, and to subject them, as to the possession and enjoyment of a valuable and probably necessary privilege, entirely to the mercy of the defendant.

The defendant avers, in his answer, that the plaintiffs have neglected to comply with the stipulations and conditions required by the agreement; but he specifies no other failure than their alleged omission to "grade" the road in such a manner as would be acceptable to the commissioners of highways of the town of Rye, or at all, and that such commissioners have not accepted the road. I have examined the evidence very carefully, and it appears to me to establish a substantial performance

New York and New Haven Rail Road Company *v.* Pixley.

in every other particular. It seems that some of the posts in the picket fence were not cased as they were in the fence in front of the house occupied by Mr. Beers, as the agreement required; but the difference does not appear to have been material, as no objection was made by the defendant, and it is to be inferred from that, and the omission by his counsel to say any thing about it, on the argument, that the work was accepted by him as a substantial compliance with the stipulation, in that particular.

The principal question is in reference to " grading" the road. It has been seen that it was to be so graded as to be accepted by the town. The defendant is mistaken, in saying, as he does, in his answer, that the road was, at the time of the commencement of this suit, and still is, " ungraded." The witness Townsend says, " I graded a road [for the plaintiffs] from High street to the station." The objection now urged, to the work, is that the graded part of the road is not sufficiently wide. Townsend testifies that the average width of it was about twenty feet. It appears from the testimony of the witness introduced by the defendant, that the wagon track as graded at a place where the road passes a large rock, is only nine feet wide. This is certainly quite narrow, and the road must be very inconvenient and insufficient to accommodate the public at a rail road depot. But the stipulation was simply to so grade the road that it should be accepted by the town. By that I understand that the work was to be done in such a manner that it would be acceptable to the town, not that it should in fact be accepted by the commissioners of highways. It would be an unreasonable presumption to suppose that the plaintiffs intended so far to place themselves in the power of those officers that if they should capriciously reject the road, when finished, all the labor and expense bestowed upon it should be lost; whether the road was or was not, acceptable to the town, can only be inferred from the circumstances. Townsend testifies that it was about equal to their common roads. Smith, the agent, swears that it was as good as common roads in such situations. It appears

that the road had been used by the public for some eight months before the suit was commenced. There was no evidence that any one but the defendant was ever dissatisfied with the road, or disapproved of the manner in which it was graded. The defendant was occasionally upon the road while the work upon it was going on, and after it had been finished, and when the public was using it, and never expressed any dissatisfaction with it until the plaintiffs demanded the surrender of his free ticket. It seems to me that under these circumstances, and in the absence of any evidence of dissatisfaction, I am bound to say, notwithstanding my own impression that the road is inconveniently narrow, that it is acceptable to the town. In fact the people have accepted it, by using it without objection, although there is no evidence that it has been officially recognized by the commissioners of highways. Besides, when the objection raised refers to the comparative extent, and not to the entire subject, the acts of the party to be benefited are entitled to great weight, to show either a full compliance, or the defendant's consent to accept of what has been done, as an equivalent to the stipulated advantage.

Upon the whole, I am satisfied that it would not only be highly prejudicial, but unjust, to the plaintiffs and to the public, to suffer the defendant to carry into execution his threat to close this road. The damage which would be sustained by the plaintiffs is of so aggravated a character, and so little susceptible of adequate redress, as to justify the interposition of this court by way of prevention, at their instance. At the same time I am not, under the circumstances, inclined to deprive the defendant of any opportunity to show, if he can, that the plaintiffs have not fully complied with their stipulations, and to obtain therefor an appropriate redress.

There must be a decree for a perpetual injunction restraining the defendant from obstructing the road in question, but without reference to the corner of his lot lying east of the rock, which has been used in returning north from the depot; and without prejudice to any claim which he may have against the plaintiffs

for a specific and entire performance of the agreement between the parties; and for damages by reason of the failure (if there has been any) of such performance.

I shall not award any costs to the plaintiffs, as they might have made a less questionable road.

[WESTCHESTER SPECIAL TERM, September, 1853. *S. B. Strong,* Justice.]