Wheeler agt. Gilsey.

---

## NEW YORK COMMON PLEAS.

EVERETT P. WHEELER agt. PETER GILSEY and another.

A person cannot have an *easement* over his own land.

Where a person owning a large plot of ground in the city of New York, makes a way over it from his dwelling to communicate with the open thoroughfares of the city, and uses such way over his own ground for a period of thirty years, and the plot is afterwards subdivided into and sold as city lots, a purchaser of a lot at such sale with *the dwelling thereon*, cannot claim by *prescription* a right of passage over the lots, part of such plot, purchased by *others* at such sale, on account of the original owner's use of the road in question.

A purchaser at such sale of an inner lot, with the dwelling thereon, may claim a right of way by *necessity* over the lots which lie between him and the *open* streets of the city, and for such purpose may pass over the road used by the owner of the plot before the same was divided into city lots.

The *necessity* out of which a right of way arises is strict, and should continue only as long as the necessity exists.

Where an *easement* is annexed to a private estate, the due enjoyment will be protected by injunction.

Section 7 of article 1 of the constitution of the state of New York of 1846, does not apply to the case where a right of way arises by necessity.

Where a person is restrained by an order of injunction from performing an act on *his own land*, and stands by and suffers another to perform the act which he could prevent, he is guilty of a violation of the injunction.

*Special Term, November*, 1867.

On the first of May, 1864, Edward Belknap was seized

and possessed of a parcel of land, with a dwelling house thereon, situate in the city of New York, bounded on the north by the centre line of Eighty-fourth street, on the east by the East river, on the south by the land of George Jones, and on the west by the center line of Avenue B. The dwelling house, which was occupied by Belknap as a residence, was situated near the southerly part of the land. There was leading from the dwelling house of Belknap a road or way, running northerly to the intersection of Avenue B and Eighty-fourth street. The road, through its entire length, passed over the lands of Belknap. It was a private way used by Belknap, as a means of access to his dwelling to and from the public streets. Neither Avenue B nor Eighty-third street are open to the public. Eighty-fourth street is open to a point near its intersection with Avenue B, where the road in question leading from Belknap's house communicates with it. Belknap, the owner of the land over which the road passed, had used this way as a means of egress from and access to his said dwelling house. The road in question had been used for such purpose for a period of about thirty years, and was the only means of communication between Eighty-fourth street and the dwelling house.

In May, 1854, Belknap executed a mortgage covering this entire parcel of ground; and in April, 1864, the plot of ground was subdivided into city lots and sold at public auction by the sheriff of the city of New York, in pursuance of a judgment made in an action for the foreclosure of said mortgage. At such sale made by the sheriff, William Neilson purchased five of said lots lying on the south side of Eighty-third street, which street, running through the plot of ground, is not yet opened. The dwelling house in question formerly occupied by Belknap, went with such purchase. Neilson afterwards purchased several of said city lots on the north side of Eighty-third street, in front of said dwelling house, and over which the road in question passes. The defendant Gilsey became and is the owner of four of said

city lots, part and parcel of the property of Belknap, situate on the southerly line of Eighty-fourth street and directly north of the lots last above described as purchased by Neilson. The road in question so used by Belknap for the purpose aforesaid passes over one of said lots purchased and owned by defendant Gilsey. Neilson, after the acquisition by him of the title to the lots and the dwelling house above mentioned, part of the land of Belknap, used the road above described as a means of getting from the dwelling house to Eighty-fourth street, and which was the only road in use for reaching the open streets from said dwelling.

This road was so used at the time Gilsey purchased the lots on the south side of Eighty-fourth street, over one of which lots the road passes.

On the 20th day of May, 1867, Neilson granted and conveyed to the plaintiff the four lots of ground on the south side of Eighty-third street, with the dwelling house aforesaid with the appurtenances. The conveyance to the plaintiff contained, among other things, a grant to the plaintiff of " *whatever right of way the party of the first part (Neilson) may have to Eighty-fourth street from said dwelling house.*" In the conveyance to Neilson by the sheriff, there was no grant to him in terms of a right of way over the lands of Belknap, lying north of the lots purchased by Neilson, but he continued to use the road above described after his grant to plaintiff, as he had before, up to the month of September, 1867, when he delivered up the possession of the dwelling to plaintiff, who has since been in the actual use and occupation of the dwelling as a residence.

Plaintiff, after going into the dwelling, commenced to use said way as it had been theretofore used by Belknap and Neilson, as a means of getting to and from his dwelling, and for this purpose passed over that portion of the land formerly owned by Belknap, to which defendant Gilsey had acquired title.

It appears by the papers in the case, that plaintiff has no

way to go to and come from his dwelling with horses, carts, or carriages, so as to communicate with or enter any street or highway open to the public, except over said road.

In the early part of October, 1867, preparations were made by some parties to build a fence across the southerly line of the lots of the defendant Gilsey, so as to shut up said road. Holes were dug in several places, for the purpose of putting fence posts therein, and of so obstructing the road as to render it impassable, and to cut off all means of travel over it by the plaintiff. , Plaintiff remonstrated against the contemplated act of closing the road.

To prevent the closing of this road the plaintiff commenced this action, and in his complaint alleges that the defendants are the parties who are engaged in the construction of the fence and threaten to complete it, and he asks that they be prevented by injunction from fencing up and obstructing said road. Plaintiff alleges that the shutting up of the road would work irreparable injury to him and to the inheritance, and that his access to and from said dwelling occupied by him *with horses, carts and carriages would be entirely* cut off and destroyed, and that the same could no *longer be used as a dwelling.*

An injunction order was issued, according to the prayer of the complaint, and the same was served on the defendant Gilsey on the 4th day of October, 1867, and on the defendant Kilpatrick, who, it is alleged, was engaged in the work on the fence on the 11th day of October, 1867.

Notwithstanding the commencement of this suit and the service of the injunction order, the fence has been erected since the service of the complaint and injunction order on defendant Gilsey.

The defendant Gilsey, in his answer to the complaint, among other things, denies that the road in question ever existed otherwise than as the private road or entrance of Belknap over his own grounds. He avers that he purchased the lots owned by him from Mary Irving, who, as defendant

avers, is engaged in putting up the fence on his land, in pursuance of her contract made with him at the time he purchased the property from her.

The defendant, in his answer, also says that he had no intention or design of so inclosing the lots owned by him, as to prevent the plaintiff's ingress or egress to and from his house to Eighty-fourth street; but that *he expressly offered twelve feet upon the westerly part of his land through* and upon which he might pass from his house to Eighty-fourth street.

The road has, however, been closed by the fence, and it appears by the affidavit of the plaintiff that the defendant Gilsey, before the commencement of this suit, had informed him that he intended to and would put a fence across said road, so as to shut up the same.

Plaintiff now moves that the defendants be punished for a contempt in violating the injunction, and asks for an order that the fence be removed. Defendant Gilsey moves, at the same time, that the injunction be dissolved.

E. P. WHEELER *and* JOHN W. EDMONDS, *for plaintiff.*

H. M. WHITEHEAD *and* HENRY L. CLINTON, *for defendants.*

VAN VORST, J. A right of private passage over another man's ground is an incorporeal heriditament. It may arise either by grant of the owner of the soil, or by prescription which supposes a grant, or from necessity. (*Washburn's Easements, p.* 161, *Kent's Com. vol.* 3, *p.* 420.)

The right in question claimed by plaintiff does not arise either by grant or prescription.

The deed which the sheriff executed on the public sale of the property of Belknap to Neilson, the grantor of the plaintiff, did not purport in terms to make any such grant. Nor was there in the conveyance to the defendant Gilsey from his grantor, any easement or right of way reserved in favor of the owners of the adjoining lands.

The right claimed by the plaintiff therefor does not arise by the express terms of the conveyance to him, nor does it arise by prescription. It is true that Belknap, during all the period he owned the land, used the road in question as a means of egress from his dwelling to Eighty-fourth street, and of access to the same from the said street; and the evidence also shows that this road has been in use over said land in favor of the owner, and had been possessed by him for his own convenience for a period of some thirty years.

But no one can be said to have an easement in his own land. An easement is something impalpable, of which a seisin cannot be predicated. (*Washburn on Easements, ch.* 1, § 1, *sub.* 13, *p.* 10; *Washburn on Real Estate, vol.* 2, *p.* 26.)

By the unity of possession in Belknap of the entire land over which the road in question passed, no easement could be created by the owner's use of the road, as long as there was no severance or division of the land.

If a right of way be from close A to close B, and both closes be united in the same person, the right of way, as well as all other subordinate rights and easements, are extinguished by the unity of possession. (*Whalley* agt. *Thomson,* 1 *Bos. & Pull.* 371.)

A prescription even may be lost by unity of possession, of as high and perdurable an estate in the thing claimed, and in the land out of which it is claimed, by such prescription, because it is an interruption of the right. (1 *Inst.* 114 *b.*) As for example, when one entitled in fee to a right of way, or of common, becomes seized in fee of the land itself. (*Greenleaf Cruise on Real Property Title Prescription, vol.* 3, *p.* 428, *note.*)

But I am of the opinion that, on the ground of obvious necessity, the plaintiff is entitled to a right of way, as well over the land of Neilson, his grantor, as over the land of defendant Gilsey, which, joining on Neilson's land, faces the south line of Eighty-fourth street.

Plaintiff has no means of access to or egress from his dwelling, except over the lands of third parties.

When defendant Gilsey became seized of his lots, the road in question was in actual use, as a way to and from Eighty-fourth street to the dwelling house in question, over the land to which he acquired title. This road was the only means of communication by carriage way from the plaintiff's dwelling to the public, open thoroughfares of the city, and had been so used for thirty years. It was a well defined and graveled way. This property is useless to the plaintiff as a dwelling, unless he has a way in the true sense, by means of horses and carriages, to the public streets; without such means of transit, he cannot provide himself with fuel and other things necessary for living. He is completely isolated and shut up.

This right of way by necessity may arise in favor of a parcel of land, when the same is surrounded by what *has been* the grantor's other land, or partly by this and partly by that of a stranger. (*New York Life Ins. and Trust Co.* agt. *Milner*, 1 *Barb. Ch. R.* 353, 366; *Collins* agt. *Prentice*, 15 *Conn.* 39.)

It is not confined simply to a right over other lands remaining in the grantor, but it extends to a right of way over the lands of others.

In *Buckly* agt. *Coles* (5 *Taunt.* 311) it was decided that if a person owned close A, and a passage of necessity to it over close B, and he purchased close B, and thereby united in himself the title to both closes, yet, if he afterwards sold close B to one person without any reservation, and then close A to another person, the purchaser of close A has a right of way over close B.

While it is without doubt that a right of way of necessity arises and can be enforced, if a man sells land to another which is wholly surrounded by his own land, I do not think that this right is limited merely to the remaining land of the grantor. It may be quite as important for the party to have

a passage over the land of third parties, lying beyond the grantor's land, to get to a public highway.

But in this case, the lots of the defendant Gilsey came from Belknap, the owner of the plot, at the same sale in which title was acquired by Neilson to the property, a portion of which, and that out of which this right arises, he subsequently conveyed to plaintiff.

The necessity out of which this right grows is always *strict*, and the right should continue only as long as the necessity continues.

As soon as the plaintiff can have access to a public street directly from his own lands, the right should terminate. He cannot continue this means of using the land of Gilsey for an indefinite period of time; and it must of necessity be subservient to the right of Gilsey to build on his lots, so soon as the streets are open for him to improve them in that way.

The defendant Gilsey, in his answer, says he has offered to give a way to plaintiff over his land twelve feet wide, the same to pass over another portion of his lot.

This is an admission on the part of Gilsey that the claim of plaintiff is necessitous, and not unreasonable. The defendant may still do this; provided it is done in such a way as to enable the plaintiff by means of the new way to get to the public street.

The right of selecting a place over which the new way shall pass, if one be yielded, lies with the owner of the land over which it is to pass; provided, on request, he shall designate it in a reasonable manner; and he may do it so as to be least inconvenient to himself. (*Holmes* agt. *Seeley*, 19 *Wend.* 507.)

I am of the opinion that the closing up of the road in question would be such an injury to the plaintiff, and to the estate he has in the land, as to justify the continuance of the injunction issued in this action until the hearing of the cause.

It is a well settled rule of equity that, where an easement or servitude is annexed to a private estate, the due enjoy-

ment of it will be protected by injunction against encroachment or invasion. (*Corning* agt. *Lowerre*, 6 *John. Ch. R.* 439; *Tallmadge* agt. *East River Bank*, 26 *N. Y.* 105; *Trustees of Watertown* agt. *Crane*, 4 *Paige*, 510, 514.)

In this case plaintiff claimed the easement in question. It was peaceably and without hindrance enjoyed by the owner of the dwelling at the time defendant bought his lots; and I think plaintiff has a claim to the equitable interposition of this court by injunction order, until his claim may be tried in this action. (*Bonaparte* agt. *Camden and Amboy R. R.* 1 *Baldw. Cir. C. R.* 231; *Wetmore* agt. *Story*, 22 *Barb.* 414; *New Haven R. R.* agt. *Pixby*, 19 *Barb.* 428.)

Section 7 of article 1 of the constitution of 1846 does not apply to this case. That section provides for the opening of *private roads;* but in the case before us the *way* is already opened and in use, and has been used for a great many years. Its necessity is immediate and urgent.

The motion to dissolve the injunction is therefore denied.

In regard to the alleged contempt for its violation, it is to be observed that defendant Kilpatrick was not served with the injunction order until the 11th day of October, and after the fence was erected, and that he refrained from working immediately he was served with the process.

Although there is some reason to believe that he attempted to avoid the service of the papers, I cannot find that he knew of the existence of the injunction before it was actually served on him.

I am of the opinion that the defendant Gilsey is responsible for the erection of the fence on his lands, after the service of the injunction on him. It appears that he had previously threatened to shut up the road, and there is reason to believe that he encouraged and aided in the making of the fence by Kilpatrick, and that Kilpatrick was acting with his knowledge, and to some extent, at least, under his directions and that the construction of the fence was a carrying out of his previous threat. At any rate, *he had the power and it was*

*his duty to have prevented the erection of the fence on his land, after the service of the order on him.*

The work was done under his eyes and with his approval. The maxim *"Qui potest et debet vetare et non vetat, jubet,"* applies to him. (*Neale* agt. *Osborne*, 15 *How. Pr. R.* 81; *People* agt. *Sturtevant*, 9 *N. Y. R.* 263, 278.)

The motion to show cause why defendant Gilsey should not be attached and the fence removed is granted. As to defendant Kilpatrick it is denied.