WILLIAM JAY SCHIEFFELIN, Plaintiff, *v.* JOHN F. HYLAN, CHARLES L. CRAIG et al., Defendants.

(Supreme Court, Kings Special Term, November, 1919.)

Contempt — comptroller of city of New York — injunctions — jurisdiction — Code Civ. Pro. § 610.

    A resolution of the board of estimate and apportionment of the city of New York adopted at a meeting held February 7, 1919, authorized an issue of the corporate stock of the city for purposes set forth in the resolution. On February 13, 1919, the summons and complaint in a taxpayer's action to restra'n the comptroller and other city officials from proceeding und·

said resolution, on the ground that the issue of said stock and the contemplated use of the proceeds of a sale thereof was illegal, were personally served upon the comptroller together with a restraining order and on the return of the order to show cause an injunction *pendente lite* was granted, which was affirmed by the Court of Appeals. Plaintiff charges specific violations by the comptroller of the injunction on the 15th and 17th of February, 1919. The comptroller claims that two days before the service of the restraining order upon him each and every step necessary for the issuing of the stock had been fully completed and the transaction closed, so far as his office was concerned. *Held,* that good faith on the part of the comptroller, who in nowise recognized the restraining order, required him to take affirmative measures to check any further acts necessary to consummate the forbidden transaction and, though he were guilty of no overt act of commission, he was guilty of a very serious act of omission in failing to communicate to the city authorities and also to his subordinates the fact that to his knowledge the injunction had been issued, and a motion to punish him for contempt will be granted.

An objection that the injunction order was void and inoperative at the time the comptroller was charged with violations thereof, because of the non-recital of the grounds upon which it was obtained, as required by section 610 of the Code of Civil Procedure, is without merit; the alleged infirmity is a mere irregularity and not jurisdictional.

MOTION to punish comptroller of the city of New York for contempt.

Leonard M. Wallstein, for plaintiff.

William P. Burr, corporation counsel (W. E. C. Mayer, assistant corporation counsel, of counsel), for defendant Craig.

MANNING, J. A motion is presented to the court asking for the punishment of the defendant Charles L. Craig as and for his alleged wilful contempt in violating the provisions of a certain restraining order contained in an order to show cause, made by Mr. Justice Lazansky in the above-entitled action, which

order bears date of February 13, 1919. The order was admittedly served upon the defendant Craig personally in the late afternoon of the day that it was issued. The defendant Craig at that time was and still is the duly elected comptroller of the city of New York. The restraining order in question was obtained in what is known as a taxpayer's action, brought to prevent the comptroller and other officials of the city from carrying out the provisions of a certain resolution adopted by the board of estimate and apportionment at a meeting held on February 7, 1919, whereby said board resolved to issue $4,500,000 corporate stock of the city of New York for purposes in said resolution more fully set forth; it being alleged by the taxpayer, the plaintiff Schieffelin, that the issue of said stock and the use of its proceeds was beyond the power of the board of estimate and hence illegal.

The summons and complaint in the action referred to were served upon the defendant at the same time the restraining order was delivered to him on February 13, 1919.

On February 15, 1919, upon a hearing had before Mr. Justice Cropsey on the return of the order to show cause an injunction *pendente lite* was granted. 106 Misc. Rep. 347. From this order the defendant appealed to the Appellate Division and subsequently to the Court of Appeals, the order being affirmed in both courts.

The plaintiff in this proceeding charges that the defendant Craig wilfully and deliberately violated and disobeyed the provisions of the restraining order issued by Mr. Justice Lazansky, which in part reads as follows: " Pending the hearing and determination of this motion it is: Ordered that the defendant Craig, as Comptroller of the City of New York, be and he hereby is enjoined and restrained from issuing cor-

Supreme Court, November, 1919.        [Vol. 109.

porate stock or corporate stock notes of said City in
any amount upon the requisitions of the Public Service
Commission of the First District made from time to
time by said Commission during the years 1915, 1916,
1917 and 1918, and prior to March 18, 1913, and from
applying the proceeds realized upon the issue and sale
of any corporate stock or corporate stock notes of said
City in any amount to the redemption of special
revenue bonds issued for the purpose of providing
funds to meet the said expenses of said Commission
or issued for any other purpose."

It is charged that the defendant Craig violated these
provisions, *first*, by issuing and selling corporate stock
notes of the city upon the requisitions mentioned, and,
*second*, by applying $1,000,000, the proceeds of such
sale, to the redemption of special revenue bonds of the
city of New York, and that such violations and pro-
hibited acts were done by the defendant Craig person-
ally or through his subordinates in the comptroller's
office. Both of the specific violations are said to have
taken place on or about February 15 and 17, 1919.

Concerning the material facts there is no substantial
dispute, though, of course, the contending parties are
not in complete accord as to the specific dates upon
which certain things were admittedly done or omitted
to be done.

The defendant Craig does not deny that the cor-
porate stock was issued and neither does he deny that
$1,000,000 thereof was used for the redemption of
special revenue bonds, but he claims that each and
every step necessary for the issuing of the stock and
the application of its proceeds had been fully com-
pleted and the transaction closed, so far as his office
was concerned, on February 11, 1919, two days before
the restraining order was served upon him. Of course,
if this be the fact, then the defendant Craig cannot

be said to have violated the provisions of the order; but if this be not the fact, and he is shown to have disobeyed or ignored the order or in any manner violated its provisions, then he is clearly guilty of contempt and should be punished for not recognizing the mandate of the Supreme Court.

His claim is that on February 7, 1919, he was authorized to act regarding the stock by the resolution of the board of estimate; that on February eighth he invited the commissioners of the sinking fund to invest $1,000,000 in corporate stock notes to be used for the redemption of special revenue bonds; that on February tenth said commissioners made proposals for the investment of the $1,000,000; that on the same day, February tenth, warrants were drawn and actually signed by his deputy and by the then acting mayor of the city of New York; that on February eleventh these same warrants were signed by the chairman of the finance committee of the board of aldermen, and that on the same day the warrants, to which had been attached what is called *ad interim* certificates, undated, were delivered to the chamberlain of the city of New York, and in this manner, he says, the sale of the stock to the commissioners of the sinking fund was fully completed and thus was made beyond recall by the comptroller of the city of New York. These successive steps, he states, were taken by the subordinates of his office and according to the usual method of routine and did not call for any personal activity on his part. He also makes the claim that any and all subsequent transactions had in his office in connection with the matter were also without his personal knowledge and were, as he designates them, "mere incidental features to a completed financial transaction between the city and the commissioners of the sinking fund."

Owing to a change in the personnel of the chamberlain the warrants were not put through his office or the clearing house until February 17, 1919, and the defendant Craig claims that during the time which elapsed between the date of delivery to the chamberlain, on February eleventh, of the warrants and their payment on the seventeenth of February, he had no control or jurisdiction over the same; and his further claim is that on February 17, 1919, the subordinates in his office, without his personal knowledge and without any knowledge on their part of the restraining order, substituted the corporate stock for the *ad interim* certificates, and hence he should not be held accountable for such acts.

The significant fact, however, remains that the order in question had been served upon him personally on February thirteenth, and nowhere in his statement does it appear that he in any wise recognized the order, nor did he communicate its contents or purport to his subordinates beyond the fact, as he says, of calling the attention of Mr. MacInnes, his chief accountant, thereto, nor does it appear that he ever notified the chamberlain's office that further action concerning the issue of the stock had been enjoined by the court. Good faith on the part of the comptroller required him to take affirmative measures to check any further acts necessary to consummate the forbidden transaction, and hence if he were guilty of no overt act of commission he certainly was guilty of a very serious act of omission in failing to communicate the fact of the issuance of this injunction to the city authorities and also to his subordinates. He certainly had full and complete knowledge of it, for the fact is undisputed that on the 15th day of February, 1919, he appeared in court, in person, before Mr. Justice Cropsey and argued against the continuance of this very same

restraining order. The warrants or checks for the payment of the purchase by the sinking fund commissioners were not signed until February fifteenth or seventeenth, and the warrants were not marked paid by the bank until February seventeenth. Possessing, as he undoubtedly did, full and complete knowledge of the issuing of the restraining order, there was ample time between February thirteenth and February seventeenth, when the comptroller, whose signature was necessary to the validity of the warrants, could have stopped payment thereon by notifying the city depository, who, in turn, would have refused to honor the warrants as though notification had been given by the drawer of an ordinary check. He should have done this very thing, knowing of the existence of the court's order.

Again, had the comptroller notified the chamberlain of the issuance and purport of the injunction and requested that official to withhold his signature, does any one seriously suggest that this would not have been done? In fact, it would have been the solemn duty of the chamberlain to refrain from participating in any way in the violation of an injunction of which he had notice. The defendant says: "The issue of the so-called *ad interim* certificates were complete contracts, and I had no power to recall them."

The reasoning is fallacious and the excuse a puerile one. It was simply a transaction between two branches of the city government, concerning the city's evidences of indebtedness, the money represented being the city's money; and even assuming that these so-called certificates were in the nature of contracts evidencing an obligation to issue corporate stock in place thereof, still the fact remains beyond possibility of dispute that this is just what the injunction expressly prohibited. It cannot be seriously contended that one

branch of the city government would sue another to enforce such an obligation, and even had such action been for one moment thought of or attempted, the injunction itself would have been a complete defense or justification for not issuing the stock, and this even as against a purchaser other than a co-ordinate branch of the city government. The spirit of the injunction was not satisfied by inaction on the part of the comptroller which resulted in the performance of the prohibited act. Quite the contrary, the situation required prompt affirmative action on his part to prevent such performance. His duty required the taking by him of every possible precaution and active effort to prevent the consummation of an enterprise then only in its incipient stage, and to this end he should have resorted to all means within his power to prevent the delivery of both the receipts and corporate stock notes in lieu thereof.

It will not do for him to claim that the transaction was attended to in the usual routine manner by his subordinates. He is the person responsible and his duty required that prompt notice should have been given to his subordinates to cease further action in the matter. The law governing the situation, as stated in Rumsey on Practice (Vol. 1, pp. 591, 592) is as follows: " Injunction orders must be fairly and honestly obeyed, and are not to be defeated by subterfuges and tricks, on the part of those bound to obey them; they may be violated by aiding, countenancing and abetting others in violation thereof, as well as doing it directly, and the courts will not look with indulgence upon schemes, however skillfully devised, designed to thwart its orders. (*Mayor, etc.,* v. *N. Y. and S. I. Ferry Co.,* 64 N. Y. 622.) * * * If the party restrained permit the act which is enjoined, to be done, by one over whom he has control, or if he assists or

directs his servants or partners in doing such an act (*Neale* v. *Osborne,* 15 How. Pr. 81) or encourages it, he is guilty of a violation of the order. (*Wheeler* v. *Gilsey,* 35 How. Pr. 139.)" And in High on Injunctions (Vol. 2 [4th ed.], § 1458), the rule is stated as follows: " It is the clear duty of one who is enjoined from the commission of a particular act not only to refrain from doing the act in person but also to restrain his employees from doing the thing forbidden, and a mere passive and personal obedience to the order will not suffice. And when, by his own negligence and inattention, one who has been enjoined permits his agents, partners and employees to do the prohibited act, he may be punished for contempt in disregarding the injunction, and where defendant, against whom an injunction has been issued, negligently fails to take proper steps to insure obedience to the writ upon the part of his employees, he may be held guilty of a violation of the injunction."

The same obligation rested upon him to apprise his fellow-officials in the city government concerning the issue of this injunction and of the obligations imposed upon him thereby. Can it be doubted that if he had done so these officials would not have joined with him in respecting the court's order? Upon being so informed, it would have been the moral and legal duty of these same officials to respect and obey the solemn mandate of the Supreme Court and not to countenance or further its violation affirmatively by action or negatively by inaction. Had the comptroller discharged his duty in this respect, I entertain no doubt but that these same officials would have cheerfully co-operated with him in what could be termed as a faithful and conscientious discharge of his duty as comptroller, and as a law-abiding citizen. The record, however, shows that he did none of these things. Why he failed

in his bounden duty is nowhere satisfactorily explained in his replying affidavits.

In addition to holding the high and responsible office of comptroller, to which he was elected by his fellow-citizens, he is also a lawyer of standing at the bar, and has an enviable record of many years' practice in his profession. Surely, if any one should be held to a strict accountability and be expected to render due obedience to injunctions and orders of our courts, the comptroller is that man, but in the present instance I find that he was lamentably remiss in the discharge of his sworn duty. It may be that his assumed personal knowledge of the legal situation clouded his perspective, and that he saw the situation through glasses blurred with the mist of political or personal antagonism on the part of those whom he may have surmised were watching his every step, but this of course affords him no excuse in the present situation, and yet I am charitably enough disposed to entertain the belief that his action was not entirely wilful, but savors rather of indifference or carelessness, and this being so, I cannot bring myself to the point of finding him guilty of wilful or criminal contempt, but he is nevertheless, in my opinion, guilty of a constructive or civil contempt, and must be punished in some measure therefor unless he purges himself of the charge.

The defendant also attacks the validity of the injunction order and asserts that it was void and inoperative at the time he is charged with violating it, for the reason that it does not briefly recite the grounds upon which it was obtained, as required by section 610 of the Code of Civil Procedure. This objection has no merit, and it seems needless to cite authorities upon the question. The following cases, however, are pertinent: *Daly* v. *Amberg*, 13 N. Y. Supp. 379, reported as a memorandum decision, 59 Hun, 624; affd., 126

N. Y. 490; *Atlantic & Pacific Telegraph Co.* v. *Baltimore & Ohio Railroad Co.,* 46 N. Y. Super. Ct. 577; *Church* v. *Haeger,* 33 N. Y. Supp. 47.

The alleged infirmity in the order is in no sense jurisdictional and at most is an irregularity which does not render the order void, and further, in the present case, it appears that the order was made " upon the summons and complaint and the annexed affidavits of Leonard N. Wallstein, all verified February 13, 1919." The motion to punish the defendant Craig is accordingly granted, and the court fixes the 3d day of December, 1919, at 9:30 o'clock A. M., at Part I of the Special Term for Motions at the court house, in Brooklyn, as the time and place when the method, measure and form of punishment will be determined, and such further proceedings in this matter taken as may be proper and expedient. The court directs the attorneys for the respective parties and also the defendant Craig to be present at the time and place indicated.

Ordered accordingly.