[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 107 
It is very plain that this action could not be maintained on the ground that the strip of ground eight feet in width, which it was the purpose of the action to restrain the defendant from building on, had been dedicated to the public. The deeds from Davis to Henriques, and from Henriques to Wilkes, which were deeds with full covenants, bound the lots on the original line of the street, sixty feet in width; thus including the strip of land in question. Usually, when land is dedicated to public use, the owner retains the legal title. No doubt there may be an express dedication by deed; but, as the public cannot be a grantee, or the grantees, when there is an express dedication by deed, the deed must be to an individual, or body corporate, capable of being a grantee, and of holding for the use of the public. Neither of the deeds before mentioned declared any such public use or trust; and the covenants in the deeds would seem to be inconsistent with an intention by such deeds to dedicate the strip of land to public use. The deeds from Davis to Maxwell, one of the plaintiffs, convey with full covenants to the street line, and without any restriction, stipulation or dedication as to the eight feet. The making and exhibition of the map of St. Mark's Place by Davis, showing an open space of seventy-six feet in width, that is, eight feet on both sides wider than the original street, was perfectly consistent with an intention on the part of Davis to appropriate these strips of eight feet in width, on both sides of the original street, to the private use of the occupiers of the lots on both sides of the street; and the case shows that these strips of eight feet on each side have been inclosed in court-yards, with iron railings. The judge who tried the case at special term did not find as a fact that these strips of eight feet in width had been used by the public. There is no fact found, or admitted by the pleadings, from which an acceptance by the public of any intended dedication can be inferred. It appears to me plain, then, that the judgment in this case cannot be affirmed on the ground of dedication.
But I think the action could be maintained, and that the judgment below can be affirmed, on another principle. *Page 109 
From the facts found by the judge at special term, it appears that when the plaintiff Maxwell and others bought lots in St. Mark's Place of Davis, they were shown the map or plan of St. Mark's Place, showing that the houses on both sides of the Place were to be set back eight feet from the street, and that they bought on the assurance of Davis that that plan should be observed in building on the Place; that the strips of eight feet in width on both sides of the street should not be built upon, but kept open. It is to be presumed that they would not have bought and paid their money except upon this assurance. It is to be presumed that, relying upon this assurance, they paid a larger price for the lots than otherwise they would have paid. Selling and conveying the lots under such circumstances and with such assurances, though verbal, bound Davis in equity and good conscience to use and dispose of all the remaining lots so that the assurances upon which Maxwell and others had bought their lots would be kept or fulfilled. This equity attached to the remaining lots, so that any one subsequently purchasing from Davis any one or more of the remaining lots, with notice of the equity as between Davis and Maxwell and others, the prior purchasers, would not stand in a different situation from Davis, but would be bound by that equity.
In Tulk v. Moxhay (11 Beav., 571), a covenant by the grantee of a piece of land to use it as a private square was enforced against a purchaser from the grantee with notice. The Lord Chancellor said the question was, not "whether the covenant ran with the land, but whether a party shall be permitted to use the land inconsistently with the contract entered into by his vendor, and with notice of which he purchased." He then states this principle as an answer to the question: "If an equity attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." (See, also, Patching v.Dobbins, 1 Kay, 1; Cole v. Sims, id., 56; Rankin v.Huskinson, 4 Sim., 13; Watman v. Gibson, 9 id., 196;Schreaner v. Reed, 10 id., 9.) *Page 110 
In Hill v. Miller (3 Paige, 254), where M. had purchased land in a village adjoining a public street, and it was at the same time agreed between him and the vendor that a triangular piece of ground belonging to the vendor on the opposite side of the street should never be built upon, but should be deemed public property; and the vendor executed to M. a deed of the land sold, and a bond for the performance of the agreement as to the triangular piece of land, both instruments being duly proved and recorded; and H. afterwards purchased of M. the land opposite the triangular piece, after being informed by him of the privilege secured by the bond; it was held, that H. was entitled to the benefit of the easement, and that M. could not, without his consent, be permitted to make a new arrangement with the holders of the legal estate in the triangular piece of land, by which buildings should be erected thereon.
In Barrow v. Richard (8 Paige, 351), where the owner of a block of ground in the city of New York divided it into lots, and sold the lots from time to time to different individuals, and the conveyances of the lots contained mutual covenants between the grantor and grantees respectively against the erection of any livery stable, slaughter house, glue factory, c., upon any part of the lots conveyed, or the carrying on of any manufactory, trade or business, which might be in anywise offensive to the neighboring inhabitants; it was held that the covenants in the deeds of the different lots were for the mutual benefit of all the purchasers of lots on the block; and that, although a previous purchaser from the owner of the block could not sue at law upon the covenant in the deed to a subsequent purchaser, the Court of Chancery might protect him by injunction against the carrying on of any noxious business or trade upon the lot of such subsequent purchaser.
The plaintiff, Maxwell, in the principal case, bought two of the lots on St. Mark's Place, on which first-class dwelling-houses had been erected by Davis, according to the map or plan of St. Mark's Place, made and exhibited by him (the houses being set back eight feet from the street), on the 13th *Page 111 
day of January, 1832, that being the date of Maxwell's deed. The facts found by the judge at special term, and the facts admitted by the pleadings, show that these lots were bought by Maxwell upon the assurance or agreement of Davis that all the houses on the Place, as shown on the map, were to be set back eight feet from the street, leaving the open space between the houses seventy-six feet in width.
The judge at special term found that on the 11th of October, 1832, Davis conveyed to Moses Henriques two lots on Third Avenue, at the northeast corner of Third Avenue and Eighth street (the strip of land of eight feet in width, which it was the object of this suit to restrain the defendant from building on, being a part of the northeast corner lot), and a lot on Eighth street, next easterly of the corner lots; that this deed was in the nature of a mortgage to secure the firm of Josephs Co., of which Henriques was a member, for money loaned by the firm to Davis, Davis still retaining the right to dispose of the property, accounting to them for the same when sold; that on the 13th of February, 1833, Davis negotiated a sale of these lots to Edmund Wilkes, who on that day received a deed from Henriques and wife for the lots; that at the time Davis sold these lots to Wilkes, he showed Wilkes the diagram of the Place, and declared his intention to set the building back eight feet from the original line of the street; that when Wilkes built the corner building now owned by the defendant, and also two other houses east of it, he erected them all on the line designated by Davis, and in conformity with the line of the other buildings previously erected by Davis on that street, carrying out the plan which Davis had previously formed of making St. Mark's Place a uniform street or Place of seventy-six feet in width.
The defendant holds through several mesne conveyances from Wilkes. The defendant bought with notice that it was claimed that there were restrictions which would prevent the defendant from acquiring a right, as purchaser of the lots, to build upon the eight feet described as a court yard. The uniformity of the position of all the houses on St. Mark's *Page 112 
Place was probably sufficient alone to put the defendant on inquiry.
It is probable, that the equity arising from the circumstances and assurances under which the lots were sold and conveyed by Davis, was mutual, as between him and his grantees respectively; and hence, that it would be easy to show that the equity was mutual as between his grantees, without regard to priority of conveyances, so that the equity would or might exist in favor of a subsequent grantee against a prior grantee, as well as in favor of a prior grantee against a subsequent grantee, but it is unnecessary in this case to examine or decide that question.
The judgment of the Superior Court should be affirmed, with costs, on the ground of the equity in favor of the plaintiffs, as prior grantees, arising from the circumstances and assurances under which they took their conveyances and paid their money; which equity attaches to the remaining lots, and can and ought to be enforced against the defendant, taking with notice, or under circumstances equivalent to notice, of the equity in favor of the plaintiffs.
SELDEN, J., did not sit in the case; all the other judges concurring,
Judgment affirmed.