# Cases

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## February, 1881.

---

FANNIE E. MUSGRAVE, Appellant, v. JOHN R. SHER-
WOOD, Respondent.

*Easement — statement by vendor of the use to which adjoining buildings owned by
him are to be applied — when the vendee may restrain him from applying them to
other uses.*

Prior to November, 1873, the defendant, who owned a lot on the north-east corner
of Fifth avenue and Forty-fourth street, in the city of New York, had erected
four dwelling-houses on Fifth avenue covering the entire width of the lot,
and had nearly completed a house on the part of the lot fronting on Forty-
fourth street. In December, 1873, he conveyed one of the houses and lots on
Fifth avenue by a warranty deed to the plaintiff, receiving therefor the sum
of $110,000. In the fall of 1874 the defendant remodeled his Fifth avenue
houses, joining them by a four-story structure with his building on Forty-
fourth street and converting them into a family hotel. Thereafter, and in
the spring of 1877, he was preparing to erect two additional stories on
the Fifth avenue houses and enlarge his hotel, and for that purpose was
preparing to carry up the party-wall between his house and the plaintiff's,
when the latter brought this action to restrain him from using any part of the
said party-wall, or from altering the exterior of his Fifth avenue buildings.
Upon the trial it appeared that prior to the sale to the plaintiff, in 1873, she in
company with her husband and the defendant visited the house subsequently
purchased by her and went through it; that on her saying to the defendant
that the outlook from the rear of the house was not very prepossessing the
latter said, " Well, there will be nothing upon it that will be disagreeable,
because all the property around these buildings are under restrictions; nothing
that is objectionable can be built. I, myself, am restricted from putting any-

thing but first-class private residences on this property; and they will always be, first and last, private residences." The plaintiff also testified that this statement had great influence upon her, and that it was upon the strength of it that she bought.

*Held*, that the plaintiff having purchased the premises relying upon the statement of the defendant, was entitled to an injunction restraining him from carrying up the party-wall for the purpose of enlarging the adjoining building and using the same as a family hotel.

That as to the changes made in the other buildings prior to the commencement of this action, the plaintiff having allowed them to be made without objection, must be deemed to have assented to them, and must bear the consequences of the alteration so made.

APPEAL from a judgment, entered upon the trial of this action, rendered at Special Term.

In the year 1868 the defendant became the owner of five lots of land situated at the north-east corner of Fifth avenue and Forty-fourth street, constituting together a plot of ground of about 125 feet five inches on the avenue, and 140 feet on the street.

The defendant's title to all this land was derived, either directly or through mesne conveyances, from deeds of William L. Cowdrey, referee in the partition suit of *Fair* v. *Island*, and each of the said referee's deeds contained the usual covenants against nuisances in the words following:

"And the said party of the second part, for himself, his heirs and assigns, hereby covenants with the party of the first part, and with each of the parties to said action, and with the other purchasers of any lots on the same block sold under said judgment, and with their heirs and assigns, that neither the said party of the second part, nor his heirs or assigns, nor any of them, shall or will at any time hereafter, erect, make, establish or carry on, or suffer to be erected, made, established or carried on upon the above described and conveyed premises, or any part thereof, any stable, nor any tenement house, coal yard, slaughter-house, meat shop, tallow chandlery, steam engine, smith shop, forge, furnace, brass foundry, nail or other iron factory, or any manufactory of glass, gunpowder, starch, glue, varnish, vitriol, ink or turpentine, or any coopers', carpenters' or cabinetmakers' shop, or any establishment for tanning, dressing, preparing or keeping skins, hides or leather, or any brewery, distillery, sugar or other bakery, or any lager beer establishment, or

any other trade, manufactory, business or calling, noxious or offensive to the neighboring inhabitants."

Prior to November, 1873, the defendant had erected upon the Fifth avenue lots four buildings designed to be occupied as dwelling-houses, and covering on the avenue the entire width of the plot of ground aforesaid. He had also, at the same time, nearly completed a house on the eastern portion of the plot of land on Forty-fourth street, being about thirty feet in width on the street and running back (including a one-story extension known as the "picture-gallery") to the rear of the Forty-fourth street lot.

By a warranty deed bearing date December 15, 1873, the defendant, with his wife, conveyed to the plaintiff the third house of those mentioned above, on the Fifth avenue, for the consideration of $110,000.

The said house so purchased by the plaintiff was and still is known as No. 535 Fifth avenue, and it was taken possession of by the plaintiff and her husband immediately after the delivery of the said contract. They fitted it up and furnished it in accordance with their taste, and ever since have continued to occupy it, and now occupy it, as a private residence.

In the fall of 1874, the defendant remodeled his two Fifth avenue houses, standing between the plaintiff's residence and Forty-fourth street, uniting them by a structure of the same height, four stories, with his building on Forty-fourth street. The basement of the corner building was soon thereafter used, and has ever since continued to be used by the Fifth Avenue Bank, with signs on the Fifth avenue and Forty-fourth street fronts. The other portions of the entire building (comprising the two on Fifth avenue and the one on Forty-fourth street, with the new erection) were and still are so used as to form a family hotel, known as the Sherwood House. Suites of rooms with board in the general dining room, were rented to permanent guests; transient boarders were not received.

This hotel building was, and still is, rented to James P. Colt, who occupies the same as landlord. The rooms are heated by the landlord, who supplies the usual attendance for the guests. There have been and are no kitchens or laundries in the entire establishment, except those of the landlord for his own use as such, and no cooking or washing of clothes is permitted in any of the rooms

occupied by or rented to the guests. The guests take their meals in the public dining room of the hotel, except that in a very few instances the landlord furnishes a private table in the guests' rooms, as is customary in all hotels.

These alterations in the buildings were fully completed in the winter and early spring of 1875, more than two years before this action was commenced, and within sixteen months of the purchase of her house by the plaintiff. Until this action was commenced, on the 7th day of July, 1877, it was not suggested by the plaintiff or her husband that the plaintiff's rights had been in any wise violated or encroached upon by the defendant.

In the spring of 1877, the defendant formed his plans for erecting two additional stories on his hotel, for the purpose of affording accommodation for a larger number of guests. The plaintiff then suggested to the defendant that he should hire her house, in order to connect that building with his hotel, but the parties could come to no agreement as to a fair rental to be paid for the same. While the parties differed, however, in that respect, there was no suggestion made on behalf of the plaintiff that his past acts had violated, or that his proposed acts would violate, any agreement or promise on the defendant's part.

A question, however, then arose between the parties as to the defendant's right to raise the party-wall between their respective properties, for his proposed new structure of two additional stories. The line between these properties, as appears from the deed of the defendant and wife to the plaintiff, ran through the middle of a party-wall. This wall was twenty inches in thickness below the first story, and the remainder of it was sixteen inches thick. The defendant proposed to increase the height of this wall to the extent of the two new stories.

The rooms in the two proposed stories were to be finished in first-class manner, and to be made of the same style of finish as the two stories immediately below. They were not to contain conveniences for cooking or laundry or house-keeping purposes, but the occupants were to take their meals in the general dining room, and in all respects to act and be treated as the other guests of the hotel. The charges were to be relatively the same as those made for rooms below. It was competent for the defendant to carry up the party-wall, with-

out in any way breaking or injuring the wall, or damaging the plaintiff's property, and such was the defendant's intention.

On the 7th day of July, 1877, the plaintiff commenced this action after the defendant had made his contracts for erecting the additional stories. On that day she obtained an *ex parte* injunction restraining the defendant from using any part of the party-wall for his proposed new structure, with an order to show cause why the injunction should not be made permanent and the restraint enlarged by prohibiting him from altering the exterior of his Fifth avenue buildings.

The defendant proceeded with his additional stories so far as he might without violating the injunction. He carried up the walls on three sides, leaving the party-wall untouched and that side exposed to the elements.

The court below held that:

I. The defendant has the right to build upon and increase the height of the party-wall standing upon his premises and those of the plaintiff.

II. The defendant cannot be enjoined from using his buildings for any other purpose or business than dwelling-houses.

III. The defendant has the right to build the proposed additional stories, and use them in the manner in which he proposed to use them.

IV. It is not necessary to decide whether the covenants contained in the defendant's deeds are extinguished, but even if those covenants were not merged and extinguished, the defendant has done and proposes to do nothing in violation of them.

V. The complaint should be dismissed and judgment rendered for the defendant on the merits, with costs and disbursements to be adjusted.

*W. A. Beach,* for the appellant.

*A. J. Vanderpoel* and *Herbert B. Turner,* for the respondent.

Brady, J.:

The questions presented by this appeal have been the subject of elaborate investigation and of numerous consultations between

myself and associate Justice Barrett. We approached the consideration of them impressed with their importance and the results which might attend our conclusions. This deliberate and careful examination has led, however, to the conclusion that upon all of them, except one, and those incidental to or necessarily connected with it, the conclusions arrived at in the Special Term were correct.

The learned justice who presided in the court below has expressed his views in an extended and able opinion,* and we adopt them as a forcible exposition of the law of this case with the single exception to which we shall presently refer. We do not consider it necessary, therefore, to make any further allusion to them and proceed at once to the consideration of the question about which we think he has erred.

The evidence shows that prior to the purchase of the premises by the plaintiff there were interviews between her, her husband and

---

* The following is the portion of the Special Term opinion, delivered by Judge Van Vorst, above referred to:

*Party-wall — right to increase its height — Covenant against the use of premises for a tenement-house.*

A party-wall may be increased in height by either party interested therein, provided it can be done without detriment to the strength of the wall, or to the building of the adjoining owner.

A covenant in a deed against the use of premises as a " tenement-house " is not violated by their use for a family hotel or apartment-house

Questions of great interest are presented by the facts appearing on the trial, and in the argument of the learned counsel appearing for the parties.

They are best disposed of by determining first what are the rights of the parties attached to and growing out of the wall in question, considered as a "party-wall;" and if it shall appear that they include the right in the parties to add to its height, whether the defendant is restrained by any agreement, covenant or equitable consideration, of which this court can take cognizance from exercising that right.

When any question has arisen, in respect to a party wall, the courts have always been careful to respect and uphold within legal limits the rights of the adjacent owners therein.

A party-wall is in no just sense to be deemed a legal incumbrance upon property. The mutual easement of adjoining proprietors in a party-wall is a benefit, and not a burden, to each of them. It is a valuable appurtenant which passes with the title to the property. (*Hendricks* v. *Stark*, 37 N. Y., 106, Porter, J.)

When the case of *Nash* v. *Kemp* (49 How. Pr., 522) was under consideration at Special Term, the right now claimed by defendant was, in part at least, incidentally examined, and the result was in substance reached, that as long as a party-wall was capable of answering the purposes for which it was built, the owner of either part might underpin the foundation, sink it deeper as occasion

the defendant in regard to them, in which certain statements and representations were made as to the character of the houses of which her purchase was one and their then present and future use.

. It appears from the findings of the learned judge that these representations were made, although denied by the defendant, and that they in fact influenced the plaintiff in purchasing the house bought by her.

The testimony of the plaintiff on this subject is as follows:

Q. At either of those conversations, do you recollect any statements or declarations by Mr. Sherwood in regard to the occupation of his remaining buildings? A. Perfectly.

Q. And you are able to designate at which of the conversations that occurred? A. No; I can't designate at which one, because before we had positively gone that far we had had a good many conversations; had looked through the house several times, I remember.

Q. Will you now state what those representations or statements

---

might require and increase its thickness within the limits of his own lot, or its length or height, if he could do so without injury to the wall or the building on the adjoining lot. He could, however, do nothing to its permanent injury as a mutual support to the adjoining house.

An examination of the adjudged cases there cited seemed to lead to such conclusions. But the right to add to the height of the wall, even within the limits of an owner's lot, was not involved in that action, nor was the right claimed by the defendant herein determined by the cases therein cited.

*Brooks* v. *Curtis* (50 N. Y., 639) does, however, distinctly pass upon and determine such right. Rapallo, J., in delivering the opinion of a unanimous court, says: "We think that the right of either of the adjacent owners to increase the height of a party-wall when it can be done without injury to the adjoining building, and the wall is clearly of sufficient strength to safely bear the addition, is necessarily included in the easement."

The question was directly involved, and this right should be regarded as definitely determined.

But the learned counsel for the plaintiff, in his able argument, would limit that case to a wall which was in an unfinished condition, when it was constituted a "party-wall." He urges that while that case sanctions the right to carry up an *unfinished* party-wall, it has no application to the wall under consideration, which was a *finished* structure, separating two completed houses, built for use as private residences, when the plaintiff's rights were acquired. It is true that in *Brooks* v. *Curtis*, when the plaintiff received his deed the wall was unfinished; but even in its incomplete condition it was regarded as a party-wall, which conferred the right to carry up the whole wall, although one-half thereof rested upon the land of the plaintiff. The wall was, however, afterward completed and

of Mr. Sherwood, to which you allude, were? A. I remember perfectly on one occasion, which conversation I can't remember, we were going through the lower rooms of the house; Mr. Sherwood had a cane in his hand and he was constantly knocking the plate-glass to show the superiority of the glass, and also to examine the woodwork of the house; we came to the rear room of the house, the outlook was not very pleasant, as one of the lots on the north side was not cultivated at all or built upon, and I said to Mr. Sherwood, "this does not look very prepossessing," and he said, "well, there will be nothing upon it that will be disagreeable, because all the property around these buildings are under restrictions, nothing that is objectionable can be built. I, myself, am restricted from putting anything but first-class private residences on this property; and they will always be, first and last, private residences."

Q. What influence did that declaration of Mr. Sherwood, in regard

---

had been in use for more than twenty years before the defendant commenced to add to its height. If the right reserved or created by the deed was only to carry up an unfinished wall, that right would have been exhausted when the structure had advanced to its then completion, and it could not have been added to afterward except through some newly acquired right or license, and of this there was no claim.

*Brooks* v. *Curtis* announces the general and unqualified doctrine that a party-wall may be increased in height by either party interested therein, provided it can be done without detriment to the strength of the wall, or to the building of the adjoining owner.

There is no evidence that the proposed addition to the height of the party-wall under consideration, will be to its detriment or to the injury of the adjoining building.

It is claimed, however, on the part of the plaintiff that the proposed increased height of the defendant's houses and the use to which he means to apply them, will constitute an injury to the plaintiff's property, and would constitute a breach of the defendant's promises and agreements with her.

The question then arises, should the defendant, for any reason appearing in the case, be abridged of his legal rights, incident to his easement in the party-wall in question, and be restrained from increasing its height, in completing the addition to his adjoining buildings?

(Here followed a consideration of the point discussed in the opinion of Brady, J.):

A question yet remains to be considered, as to whether the contemplated changes in the defendant's houses and their devotion to the purposes of a hotel, constitute a violation of the covenants in the deeds through which he became seized of the property.

to his buildings being always first-class private dwellings, have upon your proposed purchase ? A. It had a great influence upon me; it was upon that *that we bought, knowing that the two houses on Fifth avenue were all finished, and the one on Forty-fourth street nearly completed, which he told me would be his own private residence.*

Q. Would you have made the purchase of this house without those statements and representations ? A. No, sir; I should have seriously objected to it; I should not have bought.

And we regard the learned justice as having found this, because in answer to the application of the defendant to make one finding involving this element, he says: "As a whole I decline to find this proposition;" but in reference to the contract of sale says, as follows: " In my decision, filed herewith, I have stated as my conclusion upon the evidence that on one occasion, in the early stages of the negotiations and anterior to the contract of the fifth December, in an interview between the parties while inspecting the premises, the

Witnesses, upon the trial, speak of the defendant's houses as heretofore used and as contemplated to be used as an " apartment-house," or " French flats," or " a hotel," " a family hotel." One witness calls it a " boarding-house." Mr. Musgrave only speaks of it as a " tenement-house." He says the changes give it the appearance of a large apartment hotel, tenement-house character, whatever you choose to call it."

But in adding to their height the defendant has not changed the general style or appearance of his buildings. They are externally the same houses with two added stories of the same material and architecture which belonged to them before the addition.

William H. Guion, a witness for the plaintiff, says that from the added stories they have not lost the external appearance of private residences, although higher than private residences are built.

There has been no evidence adduced as to what use constitutes a building a " *tenement-house.*"

I am inclined to the opinion that the defendant's houses best answer to the designation of a " family hotel." Together they are known as " the Sherwood House." The house is not, however, designed for the accommodation of transient guests or casual boarders. Rooms in suites or singly on the different floors are taken by families or individuals for some period. The cooking for all the guests or residents of the hotel is done by the proprietor on the premises, the house having been provided with all the means and appliances for the purpose. No cooking or laundry work is allowed in the rooms of the guests. Occupants of the rooms take their meals in the dining-room of the hotel or in their own apartments, according to their arrangements with the proprietor, who supplies all the tables.

defendant, in response to a remark made by the plaintiff in regard to other property, made certain statements which are stated in my decision as well as the circumstances under which they were made. The statements were, however, in substance as those stated in this proposition. But I do not attach to them the character of formal representations or promises made to induce the purchase. No agreement of the parties was then reached; and in view of what afterwards transpired between the parties in coming to an agreement, and of the contents of the contract and deed, I do not regard these statements as material. The defendant and her husband have, however, both testified that they relied on these statements in making the purchase, and would not without them have made it. I accept their evidence as to the influence of these statements upon them, but I do not think the facts and circumstances justify such reliance, as I have stated in my opinion."

It also appears that at the time these representations were made four houses on Fifth avenue, including the plaintiff's, were finished,

---

Does a house so managed, occupied and maintained, violate the covenants in the deeds to the defendant ?

And here we encounter an objection, interposed by the learned counsel for the defendant, that the covenants in the defendant's deeds do not inure to the advantage of the plaintiff — the argument being, that, as between the plaintiff and the defendant, the covenants were extinguished because not included in the plaintiff's deed.

It is true that the defendant has not placed the plaintiff under any of the covenants contained in the deeds to himself, and it may be that as between them he did not mean to perpetuate the covenants. But assuming that the covenants are in force, and that the plaintiff may avail herself of them as against her grantor, and through them limit the defendant as to the use of his own lands, yet I do not think the defendant's houses violate the covenant.

The covenants interdict by name the erection of buildings devoted to specific businesses and trades. A hotel or apartment-house is not among them. A *"tenement-house"* is forbidden. I am referred to no legal definition of the word "tenement-house" as used in the covenant, and I am not aware that there is any.

As already stated, the defendant's houses, as united and conducted, are not, in terms or according to any accepted meaning or understanding of the word, proved to be such, and unless the word be the equivalent for a *hotel* or *apartment house*, a breach of the covenant in this respect has not been proven, and is not ·threatened.

The burden is on the plaintiff to establish that the defendant's houses, as conducted and proposed to be, come within the meaning of the covenant. As the covenants, as construed by the plaintiff, work a restraint of what would other-

and one in Forty-fourth street, forming a part of the defendant's plot of land, was nearly completed, so that the representations were made as to existing things, to facts accomplished, namely, houses completed and one in process of erection and nearly completed, and all of which were necessarily of the character named, because, as the defendant said, he was restricted from erecting other than first-class private residences on the property.

The learned justice, while accepting the evidence of the plaintiff and her husband in reference to the representations referred to, did not deem the facts and circumstances embraced in them as sufficient to justify a reliance upon them, but regarded them as having no legal vitality, substantially for the reason that they were not incorporated in the deed, or in the contract of sale, and were not repeated or alluded to at the time the contract of sale and purchase was made. It appears, further, that after the representations were uttered, and while negotiations were pending, an offer was made by the defendant to accept $120,000 for the house, which elicited an offer for it

wise be a lawful use of the defendant's houses and lands, to be restrained, the breach made or threatened should be clearly and satisfactorily established.

From the connection in which the word "tenement-house" appears in the covenant with other forbidden buildings and business, it would imply that about such premises there is something noxious or offensive. The word "tenement," in its ordinary acceptation, is applied to houses and other buildings, yet, in its proper legal sense, it signifies everything that may be holden. It not only includes land, but rents and other interests.

Tenemental land means that part of a manor which is granted to tenants, as distinguished from the demesne lands. (2 Blackstone's Com., 90.)

But it is not reasonable to conclude that the covenant absolutely requires that the owner of the land should himself occupy the dwelling-house which he may erect thereon, and that he is forbidden to erect a house which he designs to let to a tenant, or that such letting would be a breach of the covenant.

The word "tenement-house" has, however, a common or conventional meaning. Webster in his definitions of "tenement," among others, says it is "often in modern usage an inferior dwelling-house rented to poor persons or a dwelling erected for the purpose of being rented, called also tenement-house." I do not think that the defendant's hotel answers in any sense either definition. I do not think it within the true meaning of the covenant to hold that it forbids the erection of a house which might or was designed to be rented. There is nothing necessarily offensive about a rented dwelling-house.

There may be about houses erected for and occupied by many families as tenants, with all the appliances for housekeeping on separate floors. Such houses may become crowded by families and occupants, whose mode of living

on the part of the plaintiff of $110,000; and that offer being accepted the defendant drew the contract, he and the plaintiff's husband uniting their efforts to accomplish that end, and the contract thus prepared by them was copied and executed, each one taking a counterpart.

It is true that no reference was then made to the houses in the respect embraced in the representations made in the earlier negotiations for the purchase, and that nothing was said about them at the time the contract was prepared and executed, according to the testimony. They were neither repeated, nor withdrawn nor modified, and therefore whatever impressions were formed were allowed to remain. But it appears from the evidence, and is regarded by us as having been substantially found by Mr. Justice VAN VORST, that the representations and statements mentioned were the inducing cause of the purchase, one of which, as we have seen, and a very important one, was the restriction by which the defendant declared himself to be controlled as to the *use of the land*. The location of the property,

and conduct in the use of the premises and in their egress and exit therefrom may become offensive to the neighborhood. In large cities it must needs be that buildings will be erected for the accommodation, under one roof, of families of small means, as separate and distinct tenants of different parts of the same house. The tendency to the overcrowding of such houses, and the disregard of cleanliness on the part of occupants, may well constitute such buildings and their use an annoyance to the occupants of private houses adjacent.

The existence of large numbers of such houses in the city of New York has called for legislative action for their regulation. Chapter 908 of the Laws of 1867 is an act for the regulation of "tenement" and "lodging houses" in the cities of New York and Brooklyn.

Section seventeen of the act defines a "tenement-house" for the purposes of the act:'

"A tenement-house within the meaning of this act shall be taken to mean and include every house, building or portion thereof, which is rented, leased, let or hired out to be occupied, or is occupied, as the home or residence of more than three families, living independently of another, and doing their cooking upon the premises; or by more than two families upon a floor so living and cooking, but having a common right in the halls, stairways, yards," etc., etc.

Such houses are made by this act the subjects of specific municipal oversight, and are measurably under the supervision of the board of health.

I think that the covenant in question is directed against the erection and maintenance of buildings of the character of those mentioned in the act. It has no reference to a hotel of the character of the defendant's, which is, in no just sense, noxious or offensive.

the character of the houses as erected, and the price paid by the plaintiff for the one that she purchased, all have an important bearing not only upon the question whether or not the representations were made, but upon their influence in effecting the sale, and tend to fortify the charge that such representations were made and were an inducing cause. It is evident from the testimony that the plaintiff was purchasing what she regarded as a first-class residence in a desirable locality, the character of which was secured by restrictions to the extent stated, and her testimony is that it was bought as a private residence and as a permanent home. The inference justly to be drawn from the facts, namely, the locality and character of the house and its surroundings, and the consideration paid for it, was that the plaintiff was paying for the special privileges arising from the fact that it was, and the defendant's houses adjoining it were by restrictions stated to be private residences, in the language of the plaintiff "always, first and last," as declared to her by the defendant himself.

There was evidence adduced on the trial as to the effect of a hotel upon an adjoining private residence in so far as its enjoyment and value was concerned. There are evidently two opinions upon that subject.

While some witnesses discover great objections to living in a house adjoining or in the immediate neighborhood of a hotel, others see no disadvantage in such proximity. Some of the witnesses were of the opinion that a hotel depreciates the value of an adjoining house as a private residence ; others regard the devotion of the defendant's houses to the purposes of a hotel as a ground of advantage, in the prospective advance in value of adjoining houses and lots for business and commercial purposes.

But I am of opinion that this line of inquiry is foreign to the interpretation of the covenant and affords no proper criterion for its construction. Unless the maintenance of a hotel is forbidden by the letter or true spirit of the covenant, effects of the character indicated cannot control, so long as they do not show the buildings or the business to be noxious or offensive. The defendant's houses have been well and in an orderly manner kept, as its title of a family hotel and the character of its guests and occupants would indicate. The plaintiff testifies that she has been annoyed by the playing of pianos and other musical instruments in the adjoining houses, and that since the defendant has carried up his additional stories the air and light have been decreased. The latter results have been produced in part by the additions to the defendant's houses on Forty-fourth street.

The party-wall is twenty inches thick up to the first story, and above that to the roof sixteen inches. Such a wall should afford reasonable protection against movements of orderly persons in an adjoining house. They are not, however.

Assuming, as we must, from the views expressed by the learned judge, that the defendant made the representations stated by the plaintiff and her husband to have been made prior to the purchase, and that those representations were the inducing cause of the purchase, we do not understand why the defendant should not, in equity, on the plaintiff's application, be restrained from altering the character of the houses which he thus declared, by restrictions in force, were to be and should be, first and last, private residences, unless she has waived her rights in this respect.

The circumstances under which the contract was prepared should not be regarded in equity otherwise than as favorable to the plaintiff, because neither of the parties framing it were lawyers, and they prepared it without resort to professional aid, which would probably have developed all the elements necessary for the protection of the plaintiff in reference to the representations made. The defendant in making these representations, which are in their nature promises to some extent, may have gone further in the negotiations than he designed, in his zeal to sell his property. But we have nothing to do with that, inasmuch as the court below has determined the issue which we have suggested on that subject in the favor of the plaintiff.

These representations having been made, and the property having been purchased through the influence which they exercised upon

the consequences of an addition to the height of the party-wall. They cannot be characterized as a nuisance, nor do they exist to a degree to render the defendant's houses "noxious or offensive to the neighboring inhabitants" within the meaning of the covenant. I should greatly hesitate under the evidence to pronounce them such.

The case of *Brooks* v. *Curtis* (*supra*) decides that the right of either adjacent owner to increase the height of the party-wall exists where it can be done without injury "to the adjoining building," and that the party making it does it at his peril. The injury alluded to, I apprehend, is physical to the building itself, the direct result of the addition to the wall. It has no reference to remote consequences.

The interference with air and light, of which complaint is made, even if within the injuries contemplated by the decision above referred to, cannot be said to arise from the party-wall, as it has not yet been raised. I fail to see how the completion of the wall up to the proposed height can in any way aggravate these results. Such consequences in a greater or less degree attend improvements and additions to city houses.          *          *          *

the plaintiff, the defendant has created an obligation which imposes upon him the observance of his representations and promises, relating, as they do, not merely to acts in the future, but, as already suggested, to an existing state of facts, namely, the construction of houses completed which in their character, by avowed existing restrictions, were and were to continue to be private residences, and this embraced the use of the easements connected with them.

We regard this case, therefore, upon these elements, as one which is governed by the principles enunciated in the case of *Tallmadge* v. *East River Bank* (26 N. Y., 105). In that case it was held that the owner of land, as stated in the syllabus of the case, might by parol contract with the purchasers of successive parcels, in respect to the manner of its improvements and occupation, affect the remaining parcels with an equity requiring them also to be occupied in conformity to the general plan which is binding upon a subsequent purchaser, with notice of the fact, though his legal title be absolute and unrestricted. It was said in that case by Suther-LAND, J.: "From the facts found by the judge at Special Term it appears that when the plaintiff Maxwell and others bought lots in St. Mark's Place, of Davis, they were shown the map or plan of St. Mark's Place, showing that the houses on both sides of the place were to be set back eight feet from the street, and that they bought on the assurance of Davis that that plan should be observed in building on the Place; that the strips of eight feet in width on both sides of the street should not be built upon but kept open. It is to be presumed that they would not have bought and paid their money except upon this assurance. It is to be presumed that, relying upon this assurance, they paid a larger price for the lots than otherwise they would have paid." This case does not stand alone. In the case of *Myers* v. *Watson* (1 Simon [N. S.], 523), (a case in which the plaintiffs insisted that they were not bound to do anything except what was imposed upon them by the written contract) it was held that a specific performance would not be enforced for the sale of land, even in a case where no actual fraud had been perpetrated to induce the making of the contract, where the grantee was induced to enter into the contract in consequence of an independent engagement by which the vendor was to do something which he had failed to perform.

The court said : "Was there any engagement on the part of Potter to do anything which he has failed to do, and on the faith of which being done it is reasonable to believe that the defendants entered into the contract in question?" And, further, "If the court is satisfied that such independent engagement was made, and that on the faith of it the defendant entered into the contract sought to be enforced there, if the plaintiff fails to do that which he has undertaken to do, even though it may have been an engagement incapable of being legally enforced, this court will leave the plaintiff to obtain such redress as he may be entitled to at law." And, further, "When acting on the faith of those representations parties have entered into contracts, it would not be consistent with the doctrines of equity to compel them to perform these contracts at the instance of those who failed in fulfilling the engagements which they entered into, and on the faith of which the contracts were made." And the concluding part of the opinion declares : "On the whole, therefore, I am of opinion that it is satisfactorily made out that the vendor by his agent induced the defendants to enter into these contracts on an assurance that certain things material to their interests should be done by him, and that having failed in performing what he had so engaged to do, his assignees are not entitled to relief in this court, so that their bill must be dismissed, with costs."

In *Pierce* v. *Woodward* (6 Pick., 206) it was held also that on the purchase of land, parol evidence was admissible to show that the principal inducement to the plaintiff to purchase was a succession to the business which had been carried on in the premises by the grantor, and with which the latter undertook to interfere. (See also *Grenawalt* v. *Kohne*, 85 Penn., 369.) It might well be presumed from the evidence that this plaintiff would not have bought the house which she purchased from the defendant, and paid the consideration she gave for it, had it not been for the representations made in reference to the houses of which it was one, if it were necessary to invoke any such element; but it is not because the fact is found that she was induced by them to make the purchase. It is to be presumed, also, that relying upon this assurance the plaintiff gave a larger sum for the property than she would otherwise have paid.

The learned justice in commenting upon the case of *Tallmadge* v. *The East River Bank* (*supra*), observes, in his opinion in regard to it, that there is entirely absent from the plaintiff's claim what was a special feature in Tallmadge's case, namely, the reciprocal and mutual easement, and, further, that the plaintiff here was placed under no obligation to use her house as a private residence. If, however, the doctrine declared in the case just mentioned is to prevail, and we assume that it is, notice to her of the character of the defendant's houses, and the terms upon which they were sold would be equally controlling upon her as upon Davis in the case (*supra*), and upon the subsequent purchasers as declared in that case. Indeed it seems to be quite clear that if the plaintiff had attempted to appropriate her house to purposes inconsistent with the design of the defendandant in constructing it and the other houses, she could be prevented, on her own statement, by a just application of the rule of law now invoked for her benefit. It must not be forgotten, in the consideration of the question involved, however, that the plaintiff's house was built with an easement, a party-wall, and which consequently existed at the time of the negotiations for and the sale of it to the plaintiff, and which was referred to in the conveyance to her. Therefore, as already suggested, it is the *use* of the existing easement for purposes antagonistical to the expressed design of the defendant in building the houses, made patent by his statements and representations, which is complained of and by which the house adjoining the plaintiff's, to the prejudice of her property, as shown by the evidence, was enlarged not as a private residence, but for business purposes, namely, as a part of a family hotel. We do not wish to be understood, however, as declaring it to be our judgment that the defendant would have no right to build upon the party-wall, if the object were to enlarge his house as a private residence. We think the case of *Brooks* v. *Curtis* (50 N. Y., 639), is decisive of that question in his favor. Such a use might be in perfect harmony with the original design in the structure of the houses and the representation and restriction to which reference has been made. The enlargement of the houses adjoining the plaintiff's premises was not contemplated with any such intention or for any such purpose, according to the findings of the learned judge who presided at the trial, but, as already suggested, was for the pur-

pose of affording accommodation for a larger number of guests in the hotel to which the defendant's houses adjoining had been appropriated.

We do not wish to be understood either as declaring that the defendant is under obligations to reform the character of the houses, other than the one adjoining the plaintiff, because we think that the changes which were made prior to the commencement of this action in the other houses, must be regarded as having been assented to or acquiesced in by the plaintiff, because she allowed them to be thus changed without objection, and in equity must bear the consequences of the alterations so made.

Our judgment is, therefore, it appearing that the plaintiff did not assent to the use of the party-wall between her and the adjoining premises for the erection of the additional stories, which were made for business purposes, that her right to protection from such a use by the defendant exists, and in equity and good conscience should be enforced, and that the learned judge presiding at the Special Term erred in his conclusions of law upon that subject. This view renders the defendant liable to the consequences of his statements and representations discussed, which, as we have seen, induced the plaintiff to purchase.

It follows, therefore, that there must be a new trial, which is ordered, with costs to abide the event.

BARRETT, J., concurred.

Present — BRADY and BARRETT, JJ.

Judgment reversed; new trial ordered; costs to abide the event.