(6 Misc. Rep. 254.)

### HAYWARD HOMESTEAD TRACT ASS'N v. MILLER.

(Supreme Court, Special Term, Monroe County.   December, 1893.)

BUILDING RESTRICTIONS—EFFECT AS TO SUBSEQUENT GRANTEES.

   A contract between the owners of property that no building shall be erected thereon within a certain distance from the streets may be made by parol, and grantees of the land, who take with notice of the extent and nature of the restriction, are bound by it.

Action by the Hayward Homestead Tract Association against Miller to enjoin the erection of a building on a certain lot. Judgment for plaintiff.

David Hays, for plaintiff.

P. Chamberlain, for defendant.

RUMSEY, J.   So far as this action is based upon the theory that the deed to the defendant forbade his erecting a building nearer to Peck street than 15 feet, I still remain of the same opinion as when the injunction was dissolved.   I thought then that the words "the said street," as used in the restriction, by fair construction, referred to Goodman street only.   At that time there was in the complaint no allegation by which it was sought to introduce any extrinsic considerations to aid in the construction of the deed.   Since that motion was decided, the complaint has been amended, and upon the trial evidence of the circumstances surrounding the transaction was given, from which it was sought to have the court change the construction which it had put upon the words of the deed.   I do not think that testimony was sufficient to bring about the result which was sought.   It was quite clear from that testimony that the deed was drawn by some one who was not accustomed to the drawing of deeds, and whose attention was not called to the necessity of using care in filling out the blanks.   But there was no latent ambiguity in it.   A latent ambiguity is said to exist where the description or word used, and which is to be construed, is equally applicable to two or more objects; and it is impossible, from the words of the deed, to decide to which it should be properly applied. The ambiguity insisted upon here arises from the claim that the words "said street" should be applied to both streets; and it is based, not upon any claim that the words themselves are ambiguous, but upon the proposition that it is evident that the draughtsman made a mistake when he drew the deed, and did not carry out the intention of the parties.   Such a condition of facts may sometimes afford a sufficient ground for reforming the deed, but it will never do to say, because a mistake was made, and certain important parts of the deed were not properly drawn, that, without reformation, the deed should be construed as though it had been drawn as the grantor intended to draw it.   The words "said street" must, of necessity, only refer to one street, and cannot refer to two.   When the deed is examined to see which street is meant, it is very clear, I think, that the proper grammatical construction requires the court to say that the street intended is the street upon which the lot is situ-

ated,—Goodman street.   I am therefore confirmed in the construc-
tion which I gave to this deed upon the motion to dissolve the in-
junction,—that if the deed, alone, is to be decisive of the rights of
the parties, the plaintiff has no standing in court.

But since that motion has been decided the complaint has been
amended, and the case comes here, not only upon the plaintiff's
claim that the proper construction of the deed entitled it to an in-
junction, but also upon the further claim that the defendant is
bound by the restriction which was put upon all the lots of this
tract by the agreement of the owners that no building should be
erected within 15 feet of any street line.   That such an agreement
may be made between the owners of property, having in view the
enhancement of its value, and making the property more agreeable
for resident purposes, has long been settled law.   The agreement
need not necessarily be made by any covenants contained in a deed,
nor by written contract between the parties, but it may be made by
parol.   Tallmadge v. Bank, 26 N. Y. 105; Trustees v. Lynch, 70
N. Y. 440, 447.   When such a contract has been made by parol, any
person who receives a conveyance of lots which are included within
it and subject to it, with full notice of the extent and nature of the
restrictions, takes the land subject to those restrictions, and is
bound by them.   Whenever a question is raised as to his liability
to conform to the restrictions, the question is whether he had notice
of them; and, if he did, whether he shall be permitted to use the
land inconsistently with the contract entered into by his vendor,
and with notice of which he purchased.   The rule is that, if an
equity is attached to the property by the owner, no one purchasing
with notice of that equity can stand in a different situation from the
party from whom he purchased.   Tulk v. Moxhay, 11 Beav. 571, 2
Phil. Ch. 774.   The case just cited is a leading case upon that point,
and, so far as I can discover, it has been followed by the courts of
England and of this country, not only without objection, but with
unqualified approval.   Coles v. Sims, 5 De Gex, M. & G. 1; 3 Pom.
Eq. Jur. § 1295, and notes; Tallmadge v. Bank, 26 N. Y. 105; Hodge
v. Sloan, 107 N. Y. 244, 17 N. E. 335.   In the above cases and au-
thorities cited, there will be found referred to a large number of
other cases laying down the same principle, and citing the same
cases.   It is unnecessary, therefore, to indulge here in any long
discussion upon the subject, because the law is so thoroughly set-
tled that the only question that can be presented is whether or
not the facts of this case bring the parties within the well-estab-
lished principle.

The only dispute here is whether the defendant had notice of this
restriction.   He himself denies that he had notice of the special
restriction until after he had obtained his deed.   He does not deny
that he was told that there were certain restrictions upon the lot,
with regard to the building of houses, when he first talked of enter-
ing into the contract.   His witness Richards says substantially the
same thing, because he says that at the first talk he had with Brad-
shaw, when he went in the interest of the defendant, he was told
that no liquor could be sold upon the premises, that no inferior

house could be built there, and that every building must be kept back 15 feet from the street. It is true that Mr. Richards, upon his direct examination, said that he was told by Bradshaw that the building must be set back 15 feet from Goodman street, and that nothing was said about the distance which it might be put from Peck street. But upon his cross-examination he says that Bradshaw told him that the building must stand at least "fifteen feet from the street," and did not specify any particular street. It is clear from the testimony of the defendant and his witness that he was aware that there were restrictions upon the lot which prevented his building within 15 feet from some street, to say the least. Now, it is undisputed that the restriction in fact was that no building should be put within 15 feet of any street. It is hardly possible to conceive that Miller should have been misinformed with regard to these restrictions, and that he should have been told that no building should be erected at a less distance than 15 feet from Goodman street, and, by inference, that he was at liberty to erect a building as near as he saw fit to Peck street. So much is to be said from a consideration of the evidence of the defendant and his witness. But, when the plaintiff's case is examined, the fact of his knowledge of these restrictions is overwhelming. It is very clear to my mind that he was put in possession of that knowledge upon his talk with Mr. Bradshaw. Although he was not clear as to the substance of the conversation, yet it is quite evident that he had in mind, when he talked to Miller, that there was a restriction as to building within 15 feet of Peck street, and it is just as clear that he gave Miller to understand of its existence. Indeed, the act of Miller in putting his buildings, which he erected in the rear of lot 71, at a distance of more than 15 feet from Peck street, at his very considerable inconvenience, is almost conclusive that he had notice that the restrictions applied to that street. If the evidence of the two Palmers is to be added to that of Bradshaw, there can be no question that he was given to understand what the nature and the extent of the restriction were, and that he knew all about it before he took his deed. That being so, it would be a clear violation of the equitable rights of the other owners of this tract to permit him to break the rule which all of them have made for their joint advantage. The power of the court in such matters is well settled. There are no equitable considerations to relieve the defendant from the necessity of complying with these reasonable restrictions as to the erection of buildings upon that lot. He had notice of this claim of the plaintiff before he took his deed. He had notice again, as he says, in October, 1891. He acted upon the restriction when he built his house upon the rear of his lot. He was advised of the plaintiff's intention to insist upon the agreement almost as soon as he commenced the erection of the building in question; and if he has incurred any very considerable expense upon his lot, in the face of this knowledge and notice, he has no one to blame but himself. In view of all these facts, I cannot resist the conclusion that the plaintiff is entitled, not only to relief by an injunction restraining the erection of the building, but to a mandatory injunc-

tion requiring the defendant to remove the building he has erected, so that it will stand at a proper distance from Peck street. Judgment accordingly.