(47 Misc. Rep. 297.)

## WEISS v. SCHWEITZER et al.

(Supreme Court, Special Term, Orange County. May, 1905.)

1. VENDOR AND PURCHASER—FAILURE OF VENDOR'S TITLE—REMEDY OF VENDEE.

Where a vendor contracted to convey a corner lot, containing a frontage of about 42 feet on one street, and was unable for want of title to convey more than about 34 feet, covered by a building, thus leaving an open strip of about 8 feet between the line of the building and the other street which he could not convey, the vendee was entitled to recover the amount paid by him upon the execution of the contract, and to establish and enforce a vendee's lien therefor.

2. DEEDS—CONSTRUCTION—PROPERTY CONVEYED.

Eighth street was laid out in 1819 on a certain map as a street 60 feet in width, and property lying within the boundary of the street was conveyed to the city, which opened, worked, and maintained the same as a street. In 1835 a map on which Eighth street was designated as St. Mark's place, and was laid out as a street 76 feet in width, thereby including 8 feet on either side of Eighth street as previously laid out, was filed. On this map a lot designated as No. 134 was represented as containing 34 feet 6½ inches, measured from the line of St. Mark's place. Held, that grantees of lot No. 134, by number and by reference to the map on which it was laid, and their successors, took no title to the 8-foot strip lying between the line of St. Mark's place and the line of Eighth street, but took, at most, an easement over that strip, which would permit of its use for courtyard purposes, and prevent its use for any other inconsistent purpose.

3. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—TITLE TO BE CONVEYED.

A provision in a contract for the sale of land, that the vendee shall take the property "subject to courtyard restrictions and covenant as to buildings," is an implication that the vendee is to receive title in fee.

4. SAME—REMEDIES BY VENDEE—ENFORCEMENT OF LIEN.

A provision in a contract for the sale of land, that if the vendor cannot make marketable title he is to repay the amount paid by the vendee without further costs or damage, merely limits the damages recoverable by the vendee, and does not preclude him from his right to enforce an equitable vendee's lien for the amount to be repaid.

Action by Sidonia Weiss against Julius Schweitzer and others. Judgment for plaintiff.

A. Cohen, for plaintiff.

M. S. & I. S. Isaacs, for defendants.

SCOTT, J. This is an action to recover the sum paid upon the execution of a contract for the sale of real estate, and to establish and

enforce a vendee's lien therefor. The defendant Schweitzer contracted to convey to plaintiff a plot of land in the city of New York, with the buildings thereon, "known by the street numbers 132 and 134 Second avenue, being at the northeast corner of Second avenue and St. Mark's place, and containing forty-two feet and six inches in width on the avenue and in the rear, and sixty-eight feet in length on the street and on the northerly side, be the same more or less." The property was to be conveyed "free from all incumbrances, except courtyard restrictions and covenant as to buildings and against nuisances as the same may be contained in deeds of record, if any there be." The buildings themselves standing on the property intended to be conveyed are 34 feet 6½ inches in width on Second avenue. Between the southerly wall of the southernmost building and the sidewalk of Eighth street, or St. Mark's place, is an open space or courtyard 8 feet in width, separated from the sidewalk by a coping or fence. The plaintiff's refusal to accept the tendered deed is based upon the contention that defendant never acquired and could not convey good title to this 8 feet, and consequently that he could not convey a plot of land beginning at the northeast corner of Second avenue and St. Mark's place, and containing 42 feet and 6 inches in width on the avenue and in the rear. Eighth street between Second and First avenues was laid out on the Randel map of July 23, 1819, as a street 60 feet in width, and Nicholas William Stuyvesant, the then owner of the property, conveyed to the city of New York the land lying within the boundary of the street as shown on this map. The street was opened, and has ever since been worked and maintained by the city as a 60-foot street. In 1835 the heirs of Nicholas W. Stuyvesant, who had died seised of a tract of land including the property now in question, desired to make partition of his real estate, and to this end caused a map or survey to be made by Samuel S. Doughty, a city surveyor. On this map Eighth street is also designated as St. Mark's place, and is laid out as a street 76 feet in width, including thereby 8 feet on either side of Eighth street as shown on the Randel map. There is no evidence that this added strip of 8 feet was ever accepted or used by the city as a part of the public street. It seems to have been used exclusively for courtyard purposes; the building line of the houses being set at the line shown on the Stuyvesant map as the northerly line of St. Mark's place. The premises in question were designated as lot No. 134 on the Stuyvesant map, which is thereon represented as containing 34 feet 6½ inches in width on Second avenue, measuring such width from the northerly line of St. Mark's place as shown on said map, which would make the northerly boundary of said lot 42 feet 6½ inches from the northerly line of Eighth street as shown on the Randel map. This lot No. 134, with other lots, was conveyed and released by his coheirs to Gerard Stuyvesant by its lot number and reference to the Stuyvesant map, but without any description by metes and bounds, courses, and distances. Gerard Stuyvesant and his wife in turn conveyed the lot, with others, to Benjamin Robert Winthrop by its lot number and reference to the Stuyvesant map, but without further description. The lot was subsequently reconveyed to Gerard Stuyvesant, who owned it at the time of his death. His executors, carrying out the directions

of his will, conveyed this lot, with others, to his son, Augustus Van Horne Stuyvesant. The deed designates the lot as No. 134 on the Nicholas W. Stuyvesant map, above referred to, and then proceeds to bound the lot as beginning at the northeasterly corner of Eighth street, and containing in width on Second avenue 34 feet 6½ inches. Augustus V. H. Stuyvesant conveyed the lot to Owen McGovern by its lot number (134) and reference to the Stuyvesant map, with a description which begins with the corner formed by the intersection of the easterly line of Second avenue with the northerly line of St. Mark's place, and states that the lot is 34 feet 6¼ inches in front on Second avenue. McGovern appears to have divided the property up and built upon it, and the subsequent conveyances omit reference to the Stuyvesant map. The defendant Schweitzer agreed to convey to plaintiff a lot of land containing a frontage on Second avenue of 42 feet 6 inches, beginning at the northeasterly corner of Second avenue and St. Mark's place, which is the name by which Eighth street is commonly known. There is no evidence that he ever acquired title to any property north of the northerly line of the plot known on the Stuyvesant map as No. 134, which on that map is represented as 34 feet 6½ inches. To comply with his contract, therefore, he must be found able to convey a frontage of 42 feet 6 inches from the corner of Eighth street and Second avenue, as shown on the Randel map; in other words, he must be able to convey the 8-foot strip lying between the northerly line of Eighth street as shown on the Randel map, and the northerly line of St. Mark's place as shown on the Stuyvesant map. I think there can be no question that all that was conveyed by the deeds heretofore mentioned was the land lying within the lines of lot No. 134 as shown on the Stuyvesant map, and that where that lot is described, in the deed to Augustus V. H. Stuyvesant and in his deed to McGovern, as commencing at the northeast corner of Second avenue and Eighth street, or St. Mark's place, the deeds must be construed as intending to indicate the corner as shown on the Stuyvesant map; that is, a point 8 feet north of the corner as shown on the Randel map. It follows that the title to the fee of the 8-foot strip never passed out of the heirs of Nicholas W. Stuyvesant, and never passed into Owen McGovern. It cannot be successfully contended that title to this strip passed by these several conveyances as an appurtenance, for it is a well-established rule that land not contained within the lines of the grant will not pass as an appurtenance to land. Armstrong v. Du Bois, 90 N. Y. 95; Ogden v. Jennings, 62 N. Y. 526; Woodhull v. Rosenthal, 61 N. Y. 382. Nor can title be traced to the 8-foot strip upon any theory that it had been dedicated as a street by the filing of the Stuyvesant map, and thus had passed to the successive grantees of lot No. 134, subject to the right of the public to use it, and that that right has been forfeited and surrendered by the neglect of the city to use it for street purposes. There can be no effective dedication of land to the public without acceptance by the public, and of this there is no evidence. Tallmadge v. East River Bank, 26 N. Y. 105; Avery v. N. Y. C. & H. R. R. Co., 106 N. Y. 142, 12 N. E. 619. I think that it is impossible to find that Schweitzer ever acquired title to the 8-foot strip which he could convey to plaintiff. The most that

he obtained or could convey was title to 34 feet 6 inches, with an easement over the 8-foot strip which would permit of its use for courtyard purposes and prevent its use for any other inconsistent purpose. Tallmadge v. East River Bank, supra. There is a substantial difference between this and what he agreed to convey, even in view of the fact that plaintiff contracted to take the property "subject to courtyard restrictions and covenant as to buildings," which necessarily implied that she was to receive title in fee. Since it was never within Schweitzer's power to fulfill his contract, no further demand upon him was necessary than that which was made. The provision in the contract that, if Schweitzer could not make marketable title, he was to repay the $2,000 paid him without further costs or damage, merely limited the damages to be recovered, and did not foreclose plaintiff of her right to maintain her equitable vendee's lien.

There must be judgment for plaintiff, with costs, and an extra allowance of $100.

Judgment for plaintiff, with costs, and extra allowance of $100.